**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Admiral PERRY, Appellant.**

Superior Court of Pennsylvania.

Submitted April 14, 2008.

Filed Sept. 15, 2008.

Reargument Denied Dec. 1, 2008.

Admiral Perry, appellant, Pro Se.

George M. Green, Assistant District Attorney and John F.X. Reilly, Assistant District Attorney, Media, for Commonwealth, appellee.

BEFORE: MUSMANNO, BENDER, and FITZGERALD,* JJ.

OPINION BY FITZGERALD, J.:

¶ 1 Appellant, Admiral Perry, files this *pro se* appeal from the order entered in the Delaware Country Court of Common Pleas, denying his first petition filed under the Post Conviction Relief Act (PCRA).[1] We find that the PCRA court erred in finding Appellant's claims previously litigated, and that trial counsel had a reasonable basis for his failure to call the police sketch artist as a witness. Nonetheless, having found that no prejudice occurred, we affirm.

---

* Former Justice specially assigned to Superior Court.

1.   42 Pa.C.S. §§ 9541–46.

¶ 2 The nature and history of the case are as follows. On June 26, 1980, Kay Aisenstein left her home in the city of Philadelphia and did not return. At the time and place of Aisenstein's disappearance, a witness, Richard Sussman, saw a young, light-skinned, black male speeding from an alleyway in a 1975 Chevrolet Malibu with its lights off. Richard Sussman and his father, Charles Sussman, were interviewed by police that night and a police sketch artist produced a composite sketch based upon a description of the driver. Richard Sussman was shown mug books, but was unable to make an identification at that time. The next morning, Aisenstein's body was found in Delaware County, beaten, strangled and raped. On June 28, 1980, the Chevrolet Malibu was located in Philadelphia. Samples of what appeared to be blood were collected from the car. These samples were analyzed by a crime lab in June or July of 1980, and then repackaged for storage. No further progress was made in the investigation until 1992.

¶ 3 In 1992, Richard Sussman was shown a photographic array, and he identified Appellant as the man he saw driving from the alleyway in June of 1980. In 1994, police obtained a search warrant to withdraw a blood sample from Appellant. In 1995, forensic DNA technology unavailable in 1980 enabled police to test the preserved blood evidence taken from the Chevrolet Malibu. The testing determined that the blood on the items taken from the vehicle came from two different people: the first was identified as Aisenstein, and

the second was identified as Appellant. N.T., 9/24/2003, at 75–76.

¶ 4 At trial, the Commonwealth built its case largely on the 1992 photographic identification of Appellant by Richard Sussman, similarities between the composite sketch prepared by the police sketch artist and a 1980 photograph of Appellant, and the DNA evidence. On September 25, 2003, Appellant was convicted of first-degree murder, kidnapping, involuntary deviate sexual intercourse, and rape in connection with the death of Aisenstein. On September 30, 2003, Appellant was sentenced to life in prison without parole on the murder charge, and an aggregate sentence of thirty to sixty years' imprisonment on the remaining convictions, to run consecutive to the sentence Appellant was already serving.[2] Appellant filed timely post-sentence motions, which were denied. He filed a timely appeal, and this Court affirmed the judgment of sentence on June 23, 2005.[3] On December 29, 2005, our Supreme Court denied Appellant's petition for allowance of appeal.

¶ 5 On February 1, 2006, Appellant filed a timely, *pro se*, PCRA petition and was appointed counsel. PCRA counsel filed a *Turner Finley*[4] letter seeking to withdraw his appearance. Counsel was permitted to withdraw and on July 19, 2007, the PCRA court denied Appellant's petition without a hearing. This timely appeal followed.

∎ ¶ 6 In reviewing the propriety of an order denying PCRA relief, this Court is limited to examining whether the evidence of record supports the determina-

2. At the time of his 2003 sentencing, Appellant was serving a previous sentence of fifteen to thirty years for a 1982 third-degree murder, robbery and burglary conviction, as well as an additional, consecutive sentence of five to ten years' incarceration related to a 1975 rape and robbery conviction. N.T., 9/29/2003, at 46–48.

3. Appellant was represented by the public defender's office both at trial and on appeal, although by different attorneys.

4. *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988); *Commonwealth v. Finley*, 330 Pa.Super. 313, 479 A.2d 568 (1984).

tion of the PCRA court, and whether the ruling is free of legal error. *Commonwealth v. Watson*, 927 A.2d 274, 277 (Pa.Super.2007). Great deference is given to the findings of the PCRA court, which may be disturbed only when they have no support in the certified record. *Id.*

¶ 7 In his *pro se* brief, Appellant raises several issues for our review, each of which contains several sub-issues. We summarize and re-order them as follows:

(1) Whether trial counsel provided ineffective assistance of counsel for: (a) failing to object to the testimony of Richard Sussman on the basis that the search warrant affidavit named Charles Sussman, rather than Richard Sussman, as the person who provided the description to the sketch artist; and (b) failing to call the police sketch artist as a witness?

(2) Whether appellate counsel provided ineffective assistance for failing to raise trial counsel ineffectiveness?

(3) Whether PCRA counsel provided ineffective assistance for: (a) failing to raise trial and appellate counsel ineffectiveness; (b) failing to investigate the police sketch artist files and failing to request an evidentiary hearing to determine if the sketch artist testimony would have been beneficial to Appellant; and (c) failing to list each issue Appellant wanted the PCRA court to review and list why each issue was meritless in his *Turner/Finley* letter?

(4) Whether the prosecutor committed prosecutorial misconduct by knowingly and intentionally presenting the allegedly false testimony of Richard Sussman to the jury and improperly emphasizing the composite sketch in his closing arguments?

(5) Whether the PCRA Court erred in denying Appellant's PCRA petition without an evidentiary hearing as to whether trial counsel had a reasonable basis for failing to call the sketch artist as a witness?

(6) Whether the Suppression Court erred in accepting the testimony of Richard Sussman without proof that Richard Sussman provided the description to the police sketch artist?

*See* Appellant's Brief at 6–7.[5]

¶ 8 Preliminarily, we note that each of Appellant's claims focus on a discrepancy between the search warrant affidavit and testimony presented at trial. Specifically, Appellant emphasizes that the search warrant affidavit lists Charles Sussman, not Richard Sussman, as the individual who provided the description for the composite sketch drawn in June of 1980. At trial, Richard Sussman testified that he provided the description, not his father. The affiant who prepared the search warrant affidavit died two years before Appellant's trial. However, Richard Sussman repeatedly testified that he and his father were interviewed together by police, and that his father was present when he, Richard Sussman, provided the description to the police sketch artist. N.T., 12/18/2002, at 6–10; N.T., 9/22/2003, at 118–19, 140, 143, 144. Additionally, trial counsel for Appellant, Joe Bullen, Esquire, noted in Appellant's post-sentence motion that "warrants are ordinarily drafted in haste from sketchy notes, and minor discrepancies are virtually unavoidable." Defendant's Memorandum in Support of Post-Sentence Motion at 5 (quoting *Commonwealth v. Jones*, 229 Pa.Super. 224, 323 A.2d 879, 881 (1974)).

5. Although Appellant has included a Statement of Questions section in his appellate brief, for clarity purposes, we discern his issues from his Summary of Argument section.

■ ¶ 9 The issue of the admissibility and authentication of the composite sketch was previously litigated in post-sentence motions and on direct appeal; thus, the PCRA court concluded that Appellant was precluded from raising the claims in his PCRA petition under the guise of an ineffective assistance of counsel claim. *See* 42 Pa.C.S. § 9543(a)(3) (stating that an appellant cannot obtain post-conviction review of previously litigated claims). However, the PCRA court erred, as Appellant is permitted to frame his claims in the context of ineffective assistance of counsel. *See Commonwealth v. Collins,* 585 Pa. 45, 60–61, 888 A.2d 564, 573 (2005) (holding that a claim of ineffectiveness of counsel is a discrete legal ground and not merely an alternative theory in support of an underlying issue that was raised on direct appeal). Accordingly, to the extent we do not require further findings by the PCRA court, we will address Appellant's claims on their merits.

■ ¶ 10 When considering an allegation of ineffective assistance of counsel, counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) Appellant was prejudiced by counsel's action or omission. *Commonwealth v. Pierce,* 515 Pa. 153, 158–59, 527 A.2d 973, 975–76 (1987). To demonstrate prejudice, an appellant must prove that a reasonable probability of acquittal existed but for the action or omission of trial counsel. *Commonwealth v. Tainan,* 734 A.2d 886, 889 (Pa.Super.1999). A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. *Commonwealth v. Williams,* 581 Pa. 57, 70, 863 A.2d 505, 513 (2004) (quoting *Commonwealth v. Rush,* 576 Pa. 3, 838 A.2d 651, 656 (2003)). Fur-

ther, "[a] PCRA petitioner must exhibit a concerted effort to develop his ineffectiveness claim and may not rely on boilerplate allegations of ineffectiveness." *Commonwealth v. Natividad,* 595 Pa. 188, 209, 938 A.2d 310, 322–23 (2007).

■ ¶ 11 We must first address Appellant's claims of PCRA counsel's ineffectiveness and the sufficiency of PCRA counsel's *Turner/Finley* letter, as Appellant is entitled to competent and diligent representation by counsel in his first PCRA petition. *See Commonwealth v. Lindsey,* 455 Pa.Super. 228, 687 A.2d 1144, 1144–45 (1996) (holding that "[a PCRA] petitioner is entitled to counsel for his first PCRA petition, regardless of the merits of his claim"); *see also Commonwealth v. Librizzi,* 810 A.2d 692, 693 (Pa.Super.2002) ("[O]nce an appearance is entered, the attorney is responsible to diligently and competently represent the client until his or her appearance is withdrawn."). In representing a PCRA petitioner, "[c]ounsel must certify to an exhaustive reading [of the record] and endeavor to uncover all possible issues for review...." *Finley,* 479 A.2d at 572. If a review of the record reveals that Appellant has any claims of arguable merit, counsel shall not be permitted to withdraw. *See id.* ("If on the other hand, there are claims of arguable merit, even though counsel may not have any confidence in them ... counsel is not entitled to seek leave to withdraw.") (quoting *Commonwealth v. McClendon,* 495 Pa. 467, 473, 434 A.2d 1185, 1188 (1981)).

■ ¶ 12 Counsel in this case has observed the procedural formalities of submitting a *Turner/Finley* letter and advised Appellant of his post-*Turner/Finley* rights. However, Appellant asserts, *inter alia,* that trial counsel was ineffective for failing to call the police sketch artist as a witness, and that PCRA counsel was ineffective for failing to investigate this claim more ex-

tensively. Appellant's Brief at 13, 23. We agree with Appellant that counsel's diligence, at least as evidenced by his *Turner/Finley* letter, was lacking. *See id.* In claiming that the sketch-artist issue had no merit, counsel states:

> Initially, it is **likely** that the sketch artist would have had difficulty in recollecting the actual meeting where he drew the sketch, the same occurring some 23 years ago. Still, it is **likely** that defense counsel would have attempted to impeach the sketch artist by inquiring about the absence of the goatee from the actual sketch [whereas Richard Sussman testified that the person he saw exiting the alleyway had a goatee]. It is also possible that the witness could have been impeached as to which Sussman (father or son) may have provided him with particular pieces of information when preparing the composite drawing. Despite the absence of this witness, defense counsel was able to sufficiently argue these discrepancies during his closing statement to the jury.

PCRA Counsel's *Turner/Finley* Letter, at 10 (emphasis added).

¶ 13 Importantly, PCRA counsel relies upon his speculation that trial counsel's closing remarks acted as a sufficient substitute for the testimony of the sketch artist. Counsel did not demonstrate any attempt to locate or contact the sketch artist. As PCRA counsel suggests, if trial counsel had called the sketch artist as a witness, it may have resulted in one of three outcomes: (1) the sketch artist might not have remembered the circumstances surrounding the composite sketch; (2) the sketch artist may have confirmed Richard Sussman's testimony; or (3) the sketch artist may have provided an opportunity to impeach Richard Sussman's testimony regarding the composite sketch. However, because PCRA counsel neither

ruled out the third possibility after interviewing the sketch artist, nor indicated that his attempts to contact or locate the sketch artist were futile, we specifically disapprove of counsel's speculation of the evidence the artist would have provided and the PCRA court's acceptance of it.

¶ 14 We also note that no evidentiary hearing was held to address the reasonable-basis prong of the *Pierce* test. "Our Supreme Court has cautioned against speculating about the reasons for counsel's actions in the absence of an evidentiary hearing, except in the clearest of cases." *Commonwealth v. Geathers*, 847 A.2d 730, 737 n. 2 (Pa.Super.2004) (citing *Commonwealth v. McGill*, 574 Pa. 574, 832 A.2d 1014, 1023 (2003)). Combining the lack of evidence gathered from either the sketch artist or trial counsel, we are unable to agree with the PCRA court's finding that "Trial Counsel had a reasonable basis for not calling the police sketch artist ... [because t]estimony by the person who actually composed the sketch ... would have only boosted the Commonwealth's evidence against Appellant." PCRA Ct. Op. at 9. Therefore, we find that the PCRA court erred in concluding that trial counsel had a reasonable basis for not calling the sketch artist as a witness.

¶ 15 However, Appellant's ineffectiveness claim cannot have merit if he is unable to meet the prejudice prong of the *Pierce* standard. *See Williams, supra.* In this respect, we agree with PCRA counsel that the claim has no merit. DNA evidence presented at trial revealed that the blood of two people were found in the car seen fleeing the scene, Aisenstein's and Appellant's. A forensic expert testified that Aisenstein's genetic profile has "a frequency of occurrence of [sic] on the order of one out of 82 trillion individuals in the Caucasian population, one out of 3,000 trillion individuals in the black population,

and one out of 69 trillion individuals in the Mexican–American population." N.T., 9/24/03, at 76. With regard to Appellant's genetic profile, the expert testified, "The frequency of occurrence of these cumulative genotypes in the Caucasian population is approximately one out of 370 million trillion. The frequency of occurrence in the black population is approximately one out of 150 thousand trillion. And the frequency of occurrence in the Mexican–American population is one out of 200 million trillion." *Id.* at 77, 863 A.2d 505. As PCRA counsel advised in his *Turner/Finley* letter, trial counsel cross-examined Richard Sussman about the discrepancies and argued his allegedly unreliable identification to the jury. In the face of the overwhelming evidence against Appellant, we cannot conclude that he was sufficiently prejudiced by trial counsel's failure to subpoena the sketch artist. *See Tainan, supra.* Accordingly, we find that Appellant's ineffective assistance of counsel claim has no merit. *See Williams, supra.*

¶ 16 The remaining claim that we address regards post-conviction DNA testing. Appellant alleges that PCRA counsel was ineffective for failing to list each issue Appellant wanted the PCRA court to review and fully explain why each issue was meritless in his *Turner/Finley* letter. In his brief, Appellant has not indicated any specific issues left unaddressed by PCRA counsel. However, Appellant's Pa.R.A.P. 1925(b) Statement specifies that PCRA counsel has failed to develop and file a motion for post-conviction DNA testing under 42 Pa.C.S. § 9543.1. *See* Pa.R.A.P. 1925(b) Statement at 3.

◼ ¶ 17 Motions for post-conviction DNA tests, while considered post-conviction petitions under the PCRA, are "clearly separate and distinct from claims pursuant to other sections of the PCRA." *Commonwealth v. Williams,* 909 A.2d 383, 384 n. 1 (Pa.Super.2006). It is well-recognized that the one-year time bar proscribed under the PCRA does not apply to petitions for post-conviction DNA testing under Section 9543.1. *See, e.g., Commonwealth v. Brooks,* 875 A.2d 1141, 1146 (Pa.Super.2005); *Commonwealth v. Young,* 873 A.2d 720, 724 (Pa.Super.2005). In addition, petitions for post-conviction DNA testing are unique in that the petition does not carry with it the right to counsel. *Brooks,* 875 A.2d at 1147 ("Nowhere does Section 9543.1 confer upon a petitioner the right to counsel.").

◼ ¶ 18 First, we note that PCRA counsel addresses Appellant's request for post-conviction DNA testing on page twelve of his *Turner/Finley* letter.[6] Moreover, we find that Appellant does not meet the requirements for post-conviction DNA testing under 42 Pa.C.S. § 9543.1(a)(2). To obtain post-conviction DNA testing under the PCRA, Appellant must prove:

If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

42 Pa.C.S. § 9543.1(a)(2). A petitioner, therefore, "does not meet the requirements of § 9543.1(a)(2) [if] the technology existed at the time of his trial, the verdict

---

6. We note that Appellant's brief appends PCRA counsel's *Turner/Finley* letter as Exhibit F, but includes only pages one through ten of the thirteen-page letter.

was rendered after January 1, 1995, and the court never refused funds for the testing." *Commonwealth v. Williams,* 587 Pa. 304, 310, 899 A.2d 1060, 1063 (2006). All of these conditions are satisfied, and Appellant makes no attempt to prove otherwise. Accordingly, PCRA counsel correctly concluded that Appellant would not merit relief on this request.

¶ 19 In conclusion, the PCRA court erred when it found Appellant's claims previously litigated, and also in concluding that trial counsel had a reasonable basis for failing to call the sketch artist as a witness. However, because Appellant cannot prove that he was prejudiced by trial counsel's inaction, his ineffectiveness claim has no merit, and PCRA counsel was properly permitted to withdraw his representation. Additionally, PCRA counsel was not ineffective for declining to pursue a post-conviction DNA testing motion.

¶ 20 Order affirmed.