J.S52010/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
                Appellee :
:
      v. :
:
:
:
MARVIN PRICE, :
:
                Appellant : No. 936 EDA 2013

Appeal from the PCRA Order February 22, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0503251-2004

BEFORE: GANTMAN, P.J., ALLEN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:         **FILED NOVEMBER 24, 2014**

Appellant, Marvin Price, appeals from the order entered in the

Philadelphia County Court of Common Pleas denying his first Post Conviction

Relief Act[1] ("PCRA") petition. Appellant asserts that the PCRA court erred

when denying his ineffective assistance of counsel ("IAC") claims related to

the failures of prior counsel to (1) move for a mistrial or request curative

instructions when the prosecutor used a religious theme in summation to the

jury, (2) call as an impeachment witness the prosecutor who represented

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

the Commonwealth at trial, (3) object to the prosecutor's knowing presentation of false testimony of Officer Dawn Benton. We affirm.

The direct appeal panel of this Court, quoting the trial court opinion, summarized the facts and procedural history of this case as follows:

> On November 7, 2003, Troy Jones [("Victim")] was shot and killed. Before he died, however, he made various statements to his family and police identifying [Appellant], Marvin Price, as his killer. Approximately fourteen or fifteen months before this incident, [Appellant] and [Victim] had gotten in an argument during which [Victim] shot [Appellant]. When police arrived on scene, [Appellant] said he did not want their help and that he would "take care" of it himself. [Appellant] reiterated this sentiment when detectives served him with a subpoena as the case was approaching its third preliminary hearing listing. That case was subsequently dismissed because [Appellant] did not appear for court to testify against [Victim].
>
> As to the incident at bar, on November 7, 2003, at around 10:00 p.m., [Victim] went to his parents' house . . . . He stayed for approximately one hour, and at around 11:00 p.m. when he walked out of his parents' house, he was shot. [Victim's] nephew, Darnell Gantt, was the first of his family outside, followed by Dorothy and Richard Jones, [Victim's] parents. [Victim] said to Mr. Gantt, "Marvin shot me." He said to his mother, Dorothy, and his father, Richard, "I'm shot. Marvin shot me."
>
> On his way to the hospital, [Victim] asked Police Officer and trained paramedic Shane Gaghan if he was going to die. Officer Gaghan told him that he didn't look good, but that the medical personnel would do all they could. Once inside the hospital, then-Inspector [Frankie[2]]

---

[2] Sergeant Frank W. Hayes referred to Inspector Heyward as Frankie. **See** N.T., 4/21/05, at 35. Our review of the record indicates that the Inspector did not testify at trial.

Heyward, in the presence of Sergeant [Frank W.] Hayes, asked [Victim] who shot him. [Victim] said that it was Marvin Price of 16th and Chelten. Following this incident, [Appellant] was not around his normal neighborhood, so the homicide fugitive squad was searching for him. [Appellant] was apprehended four months after the incident.

* * *

On April 21, 2005, [Appellant's] motion to suppress statement made by [Victim] to various civilians as well as to police was heard . . . . The motion was initially decided, but reopened upon Commonwealth request. Thus, a second hearing on the motion was held on April 25, 2004 . . . . The court ruled as follows: that the statement of [Victim] to Darnell Gantt was admissible in part as an excited utterance, that the statement of [Victim] to Inspector Heyward regarding [Appellant's] address was admissible, that the statements to Richard Jones and the second part of the statement to Darnell Gantt[3] were inadmissible, that the statements to Dorothy Jones were admissible . . . to show [Victim's] state of mind. The Commonwealth appealed the pre-trial rulings regarding the exclusion of the declarations of [Appellant's] address and the testimony from Richard Jones. In a [memorandum[4]] filed September 28, 2006, **the Superior Court reversed those pre-trial rulings and held that all of [Victim's]**

---

[3] The court ruled as follows as to Darnell Gantt's statement:

With respect to Darnell Gantt, his testimony that [Victim] said, "I'm shot, Don, they shot me," [ ] "Marvin shot me," the [c]ourt finds that portion of the statement of [Victim] to be an excited utterance. Anything further contained in the statement said by or allegedly said by [Victim] the [c]ourt finds not admissible as an excited utterance.

N.T., 4/21/05, at 78-79.

[4] **Commonwealth v. Price**, 1250 EDA 2005 (unpublished memorandum) (Pa. Super. Sept. 28, 2006).

> **declarations qualified as both excited utterances and dying declarations.**
>
> [Appellant] was tried by a jury over the course of three days, beginning January 15, 2008 and ending January 18, 2008. The jury found [Appellant] guilty of: Murder of the First Degree and Possession of an Instrument of Crime. Sentencing was deferred in order for a Pre-Sentence and Mental Health Evaluation to be completed.
>
> [Appellant] was sentenced to life imprisonment for the murder and two and one half to five years (2½-5) imprisonment for the possession of an instrument of crime to run concurrent.

*Commonwealth v. Price*, 1379 EDA 2008 (unpublished memorandum at 1-3) (Pa. Super. Dec. 21, 2009) (citations to record omitted and emphasis added).

This Court affirmed the judgment of sentence. *Id.* at 1. The Pennsylvania Supreme Court denied allocator on June 22, 2010. *Commonwealth v. Price*, 997 A.2d 1177 (Pa. 2010).

Appellant filed the underlying *pro se* PCRA petition on March 28, 2011.[5] Counsel was appointed and filed an amended PCRA petition on

---

[5] Appellant's judgment of sentence became final on September 20, 2010, ninety days after the Pennsylvania Supreme Court denied his petition for allowance of appeal. *See* 42 Pa.C.S. § 9545(b)(3) (providing "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review[ ]"). Appellant had until September 20, 2011, to file his PCRA petition. *See* 42 Pa.C.S. § 9545(b)(1) (providing PCRA petition must be filed within one year of date judgment becomes final). Because he filed his PCRA petition on March 28, 2011, his petition is timely.

- 4 -

November 4, 2011. The PCRA court notified Appellant of its intent to dismiss the PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907. The court denied the PCRA petition on February 22, 2013. This timely appeal followed. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal and the PCRA court filed a responsive opinion.

Appellant raises the following issues for our review:

> I. Was trial counsel ineffective for failing to move for a mistrial or curative instructions when the prosecutor used a religious theme to support the statements of [Victim]?
>
> II. Was trial counsel ineffective because he failed to:
>
> A. Try to call the prosecutor to the witness stand to impeach Officer Benton's testimony that she had told her of the Marvin shot me statement at an earlier time or times.
>
> B. Try to secure a stipulation from the prosecutor that if called to testify under oath she would have told the jury that Officer Benton never told her of the Marvin shot me statement.
>
> C. Try to have the prosecutor correct the false testimony given by Officer Benton by telling the jury Officer Benton never mentioned the Marvin shot me statement to her.
>
> III. Were trial and appellate counsel ineffective for failing to raise the prosecutor's knowing use of false testimony when Officer Benton testified she had told the prosecutor on a prior occasion that she heard [Victim] say "Marvin shot me?"

Appellant's Brief at 11.[6]

---

[6] We note that Appellant raised a fourth issue in his Rule 1925(b) statement, *viz.*, Appellant's "conviction which is not based on any sworn testimony

First, Appellant contends trial counsel was ineffective for failing to move for a mistrial or curative instruction when the prosecutor used a religious theme to support the statements of [Victim]. Appellant objects to the following statement during the prosecutor's summation:

> Ladies and gentlemen, the words of [Victim] are the most powerful and compelling and reliable evidence that you can have. You know intuitively that a man's dying words are crucial and reliable and powerful, you know it intuitively, because who would to go meet their maker with a lie upon their lips, who, uttering the last words they would say, would say anything other than the truth. You know that, but the law recognizes it too, the law recognizes it too, [ ] the law treats a man's dying words with the most utmost respect and treats them preciously because the law knows that—

N.T., 1/18/08, at 69-70. Appellant's counsel objected without stating the basis for the objection and the court responded: "It's argument and I'll give instructions on the law, the [c]ourt will give instructions." *Id.* at 70.

Appellant argues that trial counsel was ineffective in failing to move for a mistrial or curative instruction based upon the prohibition against using religious beliefs to bolster the credibility of a witness. He cites 42 Pa.C.S. § 5902(b) and **Commonwealth v. Chambers**, 599 A.2d 630 (Pa. 1991). We find no relief is due.

---

violates the state and federal constitutions." Appellant's Pa.R.A.P. 1925(b) Statement, 8/14/13, at 2. This issue is not identified in the statement of questions presented section of his brief or developed in the argument section; thus, it is abandoned on appeal. **See Commonwealth v. Dunphy**, 20 A.3d 1215, 1218-19 (Pa. Super. 2011).

In reviewing the propriety of an order denying PCRA relief, this Court is limited to examining whether the evidence of record supports the determination of the PCRA court, and whether the ruling is free of legal error. Great deference is given to the findings of the PCRA court, which may be disturbed only when they have no support in the certified record.

*Commonwealth v. Perry*, 959 A.2d 932, 934-35 (Pa. Super. 2008) (citations omitted).

When considering an allegation of ineffective assistance of counsel, counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) Appellant was prejudiced by counsel's action or omission. To demonstrate prejudice, an appellant must prove that a reasonable probability of acquittal existed but for the action or omission of trial counsel. A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. Further, a PCRA petitioner must exhibit a concerted effort to develop his ineffectiveness claim and may not rely on boilerplate allegations of ineffectiveness.

*Id.* at 936 (punctuation marks and citations omitted).

"Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion." "In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one."

[A] prosecutor's arguments to the jury are [generally] not a basis for the granting of a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the accused which would prevent them from properly weighing the evidence and rendering a true verdict.

> A prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present [his] arguments with logical force and vigor. The prosecutor is also permitted to respond to defense arguments. Finally, in order to evaluate whether the comments were improper, we do not look at the comments in a vacuum; rather we must look at them in the context in which they were made.

*Commonwealth v. Solomon*, 25 A.3d 380, 383 (Pa. Super. 2011) (citations omitted). "There is no prohibition against a prosecutor discussing applicable law in his closing argument, as long as he states the law clearly and accurately." *Commonwealth v. Rios*, 684 A.2d 1025, 1034 (Pa. 1996).

Our rules of evidence provide the following exception to the rule against hearsay:

> **(b) The Exceptions.** The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
> \* \* \*
>
> **Statement Under Belief of Imminent Death.** A statement that the declarant, while believing the declarant's death to be imminent, made about its cause or circumstances.

Pa.R.Evid. 804(b)(2). In *Commonwealth v. Smith*, 314 A.2d 224 (Pa. 1974), our Pennsylvania Supreme Court opined: "The reliability of a dying declaration is provided not by an oath, nor by cross-examination; rather, its admissibility is based on the premise that no one 'who is immediately going into the presence of his Maker will do so with a lie upon his lips.'" *Id.* at 225

(citation omitted); *accord Commonwealth v. Riggins*, 386 A.2d 520, 523 (Pa. 1978) (citing *Smith*, *supra*.); *Commonwealth v. Griffin*, 684 A.2d 589, 592 n.4 (Pa. Super. 1996) (citing *Smith*, *supra*.).

The PCRA court opined:

> Closing argument is a critical stage in a trial. A lawyer should not be expected to discuss the facts in a vacuum, however; it is generally necessary to consider them in light of the rules of law which a case involves. Thus a prosecutor may discuss applicable law during closing argument, so long as he or she does not misstate the law or state it in a manner calculated to confuse the jury.
>
> [Appellant's] attack on the prosecutor's "religious theme" is without merit because a quick review of the summation shows that the prosecutor's merely [sic] referenced the law relevant to [Victim's] dying declarations.[7] Dying declarations an of [sic] unavailable witness are admissible as an exception to the hearsay rule when the declarant, under the belief of imminent death, comments on the circumstances of what he or she believes will be imminent death. Various rationales have been offered for this exception, with the most commonly cited reason being that "no one who is immediately going into the presence of his Maker will do so with a lie upon his lips." The prosecutor accurately referenced this rationale in her closing argument.

---

[7] We note that this Court in a prior appeal, in ruling that Victim's dying declarations were admissible, opined:

> As stated by the Supreme Court, the reliability of a dying declaration is based on the premise that "no one who is immediately going into the presence of his Maker will do so with a lie upon his lips." *Commonwealth v. Griffin*, 684 A.2d 589, 592 n.4 (Pa. Super. 1996) (quoting *Commonwealth v. Smith*, 314 A.2d 224, 225 (Pa. 1974).

*Price*, 1250 EDA 2005 at 5-6.

PCRA Ct. Op., 9/5/13, at 10-11 (citations omitted). We agree.

Appellant's claims of ineffectiveness of trial counsel[8] based upon Section 5902(b) is unavailing. Section 5902(b) provides: "No witness **shall be questioned**, in any judicial proceeding, concerning his religious belief; nor shall any **evidence** be heard upon the subject, for the purpose of affecting either his competency or credibility." 42 Pa.C.S. § 5902(b) (emphases added). In the case *sub judice*, the prosecutor did not question any witness about his religious beliefs. Appellant cannot rely on this section to challenge the Commonwealth's closing argument.

Similarly, Appellant cites **Chambers** in support of his claim that trial counsel was ineffective for failing to request a mistrial or curative instruction based upon the prosecutor's summation. In **Chambers**, "the prosecutor stated, '[the defendant] has taken a life.' As the Bible says, 'and the murderer shall be put to death.'" **Chambers**, 599 A.2d at 643. Our Pennsylvania Supreme Court opined: "We now admonish all prosecutors that

---

[8] Appellant also avers in the argument section of his brief that appellate counsel was ineffective. Appellant did not raise the issue of appellate counsel's ineffectiveness in his Rule 1925(b) statement. **See Commonwealth v. Dozier**, 99 A.3d 106, 110 (Pa. Super. 2014) (citing Pa.R.A.P. 1925(b)(4)(vii) (issues not included in Rule 1925(b) statement are waived). Nonetheless, given our resolution of the issues with regard to trial counsel, his claim of appellate counsel's ineffectiveness would fail. "[I]f the petitioner cannot prove the underlying claim of trial counsel ineffectiveness, then petitioner's derivative claim of appellate counsel ineffectiveness of necessity must fail." **Commonwealth v. Chmiel**, 30 A.3d 1111, 1128 (Pa. 2011).

reliance in any manner upon the Bible or any other religious writing **in support of the imposition of a penalty of death** is reversible error *per se* and may subject violators to disciplinary action." **Id**. at 644 (emphasis added). The holding in **Chambers** is inapplicable in the instant case.

Appellant has not shown that the unavoidable effect of the prosecutor's comment prejudiced the jurors, forming in their minds a bias such that they could not weigh the evidence. **See Solomon**, 25 A.3d at 383. We agree with the PCRA court that the prosecutor accurately discussed the applicable law in closing arguments. **See Rios**, 684 A.2d at 1034. Because this claim is without merit, trial counsel cannot be deemed ineffective. **See Perry**, 959 A.2d at 935.

Next, we address issues II.A and III together because they are interrelated. Appellant contends that trial counsel[9] was ineffective because he failed to "try to call the prosecutor to the witness stand to impeach Officer Benton's testimony that she had told [the prosecutor] of the Marvin shot me statement at an earlier time or times." Appellant's Brief at 15. Appellant contends that if the prosecutor had impeached Officer Benton's testimony, "[t]his could have easily altered the outcome and is substantial

---

[9] In issue III of the statement of the questions presented, Appellant raises the ineffectiveness of appellate counsel. Appellant's Brief at 11. However, in the argument section of his brief, Appellant does not address appellate counsel's ineffectiveness. Issues raised in the statement of questions involved but not addressed in the argument section of the brief are waived. **Commonwealth v. Jones**, 815 A.2d 598, 604 n.3 (Pa. 2002).

prejudice." *Id.* at 17. Appellant avers that trial counsel was also ineffective because he failed to raise the prosecutor's presentation of false testimony, *viz.*, that Officer Benton informed the prosecutor that when she was on the porch she heard Victim say, "Marvin shot me." *Id.* at 18.

> Where a defendant claims that counsel was ineffective for failing to call a particular witness, we require proof of that witness's availability to testify, **as well [as] an adequate assertion that the substance of the purported testimony would make a difference in the case**. Generally, we require a defendant to demonstrate that:
>
> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) **the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial**.

*Commonwealth v. Clark*, 961 A.2d 80, 90 (Pa. 2008) (citation omitted and emphases added). "Furthermore, we note that we are bound by the PCRA court's credibility determinations where there is record support for those determinations." *Commonwealth v. Santiago*, 855 A.2d 682, 694 (Pa. 2004).

At trial, Victim's mother, father, and nephew, Officer Gordon Andrew, and Sergeant Frank Hayes testified about Victim's dying declarations. Mrs. Jones, Victim's mother, testified to the following; Her grandson, Darnell

Gantt[10] was on the porch with Victim and yelled for her to come out on the porch. N.T., 1/15/08, at 64. When she went to the porch she told Victim not to move. *Id.* She testified, "All [Victim] kept saying, because we kept talking to him, and he kept talking to Don-Don, and he told Don-Don he was shot, and he said to Don-Don, he said, Marvin shot me." *Id.* "I was there, I had the phone in my hand, I was standing in the door . . . and he kept saying it over and over, he said, Marvin, Marvin Price shot me, he kept saying it over and over." *Id.* at 65. She heard her husband and Darnell talking to Victim and he kept saying Marvin shot me. *Id.* at 66.

Mr. Jones, Victim's father, testified at trial to the following; Victim was at Mr. Jones' house the night he was killed. *Id.* at 97-98. Mr. Jones was upstairs in his bedroom when he heard three shots. *Id.* at 102. His grandson called him to come downstairs because Victim was lying on the porch. *Id.* He stated that when he went out to the porch, Victim "was alert, I said . . . what is the matter, he said, Dad, I've been shot, he said, Marvin Price shot me." *Id.*

Mr. Gantt, Victim's nephew, testified at trial to the following; Mr. Gantt had been in a car accident and was staying at the Jones' house following his release from the hospital. *Id.* at 155-56. Victim came to visit him. *Id.* at 156-57. When Victim left the house, Mr. Gantt heard "boom, boom, boom,

---

[10] We note that Darnell was also referred to as Don-Don. N.T., 1/15/08, at 64.

boom." *Id.* at 159. When Mr. Gantt opened the door, Victim fell on him and said he had been shot. *Id.* Victim said "Marvin, Marvin shot me . . . ." *Id.* at 160.

Officer Andrew testified at trial to the following; On the night of the murder, he received a radio call to go to Jones' residence. *Id.* at 198. When he arrived, he saw a man lying on the ground. *Id.* A few people were on the porch and they told him Victim had been shot. *Id.* Victim's nephew told him that Marv did it and where Marv lived, and the officer knew it was Marvin Price's address. *Id.* at 199-200.

Sergeant Hayes testified that he went to the hospital where Victim was to ensure that there were no problems. N.T., 1/16/08, at 24. He was met at the hospital by Chief Inspector Frankie Heyward. *Id.* at 23. He and the Chief Inspector went into the trauma room to see Victim. *Id.* at 25. Sergeant Hayes testified:

> . . . Chief Inspector Heyward then at that time bent over [Victim] and asked him if he knew who shot him, [Victim] replied "Marvin shot me." At that time, I'm standing right next to the chief and I'm bending over, I'm listening to the entire conversation, after [Victim] replied that Marvin shot him, then Chief Inspector Heyward said, "Marvin Price," and [Victim] said, "yes."

*Id.*

Officer Benton was cross-examined by defense counsel at trial.

[Defense counsel]: If I understand things correctly, Officer [Benton[11]], you came to the District Attorney's Office a couple years ago, 2005, in preparation for testifying in the [instant case]?

A: Correct. . . .

Q: And the crime scene log clearly depicted you were up on the porch that night; correct?

A: Correct.

Q: And you're telling us or are you telling us that you didn't bring up to anybody in preparation for going to court in this case that you heard [Victim] say the word "Marvin"?

A: I can't recall.

Q: You can't recall?

A: No, I can't.

Q: Well, isn't that an important point, isn't that something you would bring up to somebody if that's what you heard?

A: Yes.

Q: And you're telling us today you can't recall if you told anybody that ever?

A: I can't recall, I'm not going to lie, I can't recall.

Q: Did you ever prepare a document memorializing in any way, shape or form—

A: Yes, I have.

Q: —that you heard [Victim] say the word "Marvin"?

A: Oh, no, I didn't put it on paper, no.

---

[11] Counsel inadvertently referred to Officer Benton as Officer Kennedy.

Q: Did you tell a superior in the police department that you heard [Victim] say "Marvin"?

A: Yes.

Q: Who?

A: My superior.

Q: Which of your superiors?

A: My superior at the time was Sergeant [George] Holcombe.[12]

Q:. . . Did you tell anyone in the District Attorney's Office that?

A: I can't recall.

Q: How about in preparation of testifying in this proceeding, you prepared to testify, did you not?

A: Yes.

Q: Did you tell anyone, did you meet with [Assistant District Attorney Jennifer] Selber?

A: We talked about it.

* * *

Q: When was that?

A: A few months ago.

* * *

Q: You told her that you heard [Victim] say "Marvin" on the porch?

---

[12] The record indicates that he was a lieutenant at the time of trial. N.T., 1/16/08, at 56.

A: We talked about it.

* * *

Q: Did you tell Ms. Selber? You're under oath.

A: I told her that I was on the porch.

* * *

Q: Did you tell her that while you were on the porch you heard [Victim] say the word "Marvin"?

A: Yes.

N.T., 1/17/08, at 33, 34-35, 36, 37.

Defense counsel made a motion for a mistrial, out of the presence of the jury, arguing that the substance of Officer Benton's testimony was not disclosed to the defense prior to trial. *Id.* at 59. The Commonwealth, Attorney Selber, responded as follows:

> . . . I did not know that Officer Benton had heard that. Had I known, I would have used it because it's helpful evidence to me. I would have told [defense counsel] back in 2005, she was on the witness list already and on the crime scene log for that, and I would have put her on at the motion when we did the dying declaration because she would have been helpful to the Commonwealth's case, especially in light of the fact that Officer Andrew didn't hear it. . . . **And although she testified that she thinks a couple of years ago she told me, whether she did or not, I can't say, I can only say that I don't remember her telling me** . . . .
>
> * * *
>
> And the bottom line is she has been available, she's been on the witness list, it's been known to the defense as well as the Commonwealth that she was at the first scene, and what I told Your Honor before is absolutely the truth,

which is **the first time I heard from her and registered that she heard that from [Victim] was out in the anteroom, which is what I asked her, if she remembers saying something about it, which I think she said she thought she did but wasn't sure, I'm not disputing that, I'm just saying that we were not aware of it** . . . .

*Id.* at 61, 62-63 (emphases added).

The trial court opined:

[Appellant] has not—and cannot—show that [trial] counsel's failure to use the prosecutor as an impeachment witness caused him prejudice. Four witnesses—Darnell Gantt, Dorothy Jones, Richard Jones, and Sergeant Frank Hayes—testified, under oath, that they heard [Victim] say, "Marvin shot me" **before** Officer Benton provided cumulative testimony regarding the victim's dying declaration. Moreover, trial counsel aggressively cross-examined Officer Benton. Trial counsel demanded to know why inculpatory evidence identifying [Appellant] as the shooter was conspicuously absent from investigation documents and emphasized her vague, imprecise recollection that she "talked about" this statement during pre-trial preparations with the prosecutor. . . . Because Officer Benton was successfully impeached during cross-examination, there was no need for trial counsel to call the prosecutor as an impeachment witness during his case-in-chief. This more than reasonable decision was [a] matter of trial strategy, and thus, does not constitute ineffective assistance of counsel.

In his PCRA petition, [Appellant] baldly assumes the contrary and argues that if trial counsel called the prosecutor as a witness, her testimony would have . . . impeached Officer Benton. This assertion patently fails to consider the prosecutor's argument during the motion for mistrial—a motion that occurred before [Appellant's] case—in—chief. . . .

\* \* \*

If called to the stand to testify, it is highly probabl[e] the prosecutor would have provided a similar attestation. Moreover, such testimony would have been merely cumulative. In his PCRA petition, [Appellant] fails to identify what additional, non-cumulative evidence the prosecutor could have produced. Additionally, such testimony does not prove that Officer Benton testified falsely; it only shows the prosecutor and officer have a different recollection of the events of this case. . . . Here, it is clear the prosecutor would not have provided testimony helpful to the defense. . . .

PCRA Ct. Op. at 6, 7 (citations omitted). We agree no relief is due.

We hold Appellant has not satisfied the prejudice prong of the ineffective assistance of counsel test, as he has not "prove[n] that a reasonable probability of acquittal existed but for the action or omission of trial counsel. Because this claim is without merit, counsel cannot be deemed ineffective." *See Perry*, 959 A.2d at 935.

The argument section of Appellant's brief does not address issues II.B and C, of the statement of the questions presented. Therefore, these issues are waived. *See Jones*, 815 A.2d at 604 n.3 .

For the foregoing reasons, we affirm the order of the PCRA court denying Appellant's petition.

Order affirmed.

J. S52010/14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/24/2014