J-S50011-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| BRANDON RUIZ | |
| Appellant | No. 1654 MDA 2015 |

Appeal from the PCRA Order September 3, 2015
in the Court of Common Pleas of Dauphin County Criminal Division
at No(s): CP-22-CR-0000285-2012

BEFORE: MUNDY, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JULY 08, 2016**

Appellant, Brandon Ruiz, appeals from the order denying his first Post Conviction Relief Act[1] ("PCRA") petition. Appellant contends trial counsel was ineffective for not seeking a mistrial or conducting a colloquy of the remaining jurors after a juror was dismissed because she was allegedly aware of the area in question and some of the witnesses. Appellant also asserts trial counsel was ineffective for not calling an expert to testify about eyewitness identification. We affirm.

We adopt the facts and procedural history set forth by a prior panel of this Court:

> Ms. [Tiffany] Daniels's testimony is summarized as follows: Ms. Daniels and the Victim were engaged at

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

the time of the shooting. The Victim aspired to become a rapper, posted videos of himself rapping on YouTube, and performed at clubs and events. The Victim had a reputation as being involved in the hip-hop scene and he maintained a public image as being affluent.

On December 3, 2011, Ms. Daniels and the Victim went to the Derry Street Café ("Café"), left, went to another bar, and then returned to the Café at approximately 12:15 a.m. on December 4, 2011. Ms. Daniels was intoxicated by the end of the night. Although Ms. Daniels was familiar with Appellant and [Clarence Bender ("Co-Defendant")], she did not see either individual or [Appellant's friend,] Mr. [Tyrell] Weaver at the Café. Ms. Daniels and the Victim left the Café at closing time, which was approximately 1:30 a.m. In the parking lot, the Victim tried to maneuver his and Ms. Daniels's car out of its spot, but it was blocked by another vehicle. The Victim exited his vehicle and asked a nearby individual if he knew who owned the vehicle, but the individual did not respond. The Victim turned and lifted his right leg, at which point [Co-Defendant] grabbed the Victim from behind and demanded that he "give that shit up." [Co-Defendant] grabbed the Victim by the neck with his left arm and, with his right hand, held a chrome semiautomatic gun against the right side of the Victim's neck. When Ms. Daniels heard [Co-Defendant] threaten the Victim, she bent down to look out of the open driver's side doorway.

The Victim reached for his gun as he was attacked. As [Co-Defendant] and the Victim tussled, Appellant, who was unarmed, patted down the Victim. Ms. Daniels heard a gunshot, exited the vehicle, and found the Victim lying face-up in a pool of blood. One of the chains the Victim had that night was missing after the shooting. Ms. Daniels asserted in her testimony that [Co-Defendant] shot the Victim.

Mr. [John] Sanks[, head of security at the Café,] testified that the Victim and Ms. Daniels were frequent patrons of the Café. Mr. Sanks testified

- 2 -

that he was familiar with Appellant and [Co-Defendant], and that the two men arrived around midnight on December 4, 2011. According to Mr. Sanks's testimony, he patted down both Appellant and [Co-Defendant], but found no contraband. Mr. Sanks testified that he did not witness Appellant or [Co-Defendant] interacting with Ms. Daniels or the Victim that night.

Mr. Sanks testified that Ms. Daniels and the Victim left the Café, that [Co-Defendant], Mr. [Christopher] Diggs, and Mr. Weaver left the bar a few minutes later, and that Appellant walked out afterwards. Mr. Sanks testified that, upon hearing a gunshot outside, he looked across the street and saw [Co-Defendant], Appellant, the Victim and Ms. Daniels in the area where the shot came from; Mr. Sanks then watched [Co-Defendant] and Appellant cross Derry Street to return to the SUV. According to Mr. Sanks's testimony, [Co-Defendant] ran away from the scene first. Mr. Sanks testified that [Co-Defendant] and Appellant got into the SUV and, after a moment, the SUV drove westward down Derry Street.

\* \* \*

According to [Harrisburg Police Department] Detective [Christopher] Krokos's testimony, following an interview on December 4, 2011, Appellant provided him with a statement that essentially claimed that Appellant and [Co-Defendant] approached the Victim to assist him in maneuvering his vehicle, but [Co-Defendant] shot the Victim and took two of the Victim's chains. Detective Krokos testified that, following an interview on January 3, 2012, [Co-Defendant] provided a statement that asserted that Appellant was fighting with the Victim in the parking lot, [Co-Defendant] approached the two in order to stop the fight, but Appellant shot the Victim. Detective Krokos testified that the surveillance video from the Café established Mr. Diggs, Mr. Weaver, and [Co-Defendant] arrived at the Café together, and that Appellant met them at the bar. Detective Krokos testified that the

- 3 -

surveillance video from the Café established that [Co-Defendant] walked up directly behind the Victim.

(Trial Court Opinion, filed February 15, 2013, at 3-5, 14-15) (internal footnotes omitted).

On February 22, 2012, the Commonwealth filed a criminal information charging Appellant with murder, robbery, and conspiracy. . . .

Following trial, a jury found Appellant guilty of second degree murder and robbery. The jury found Appellant not guilty of conspiracy. On November 5, 2012, the court sentenced Appellant to life imprisonment for the murder conviction. The court imposed a concurrent term of ten (10) to twenty (20) years' imprisonment for the robbery conviction.

*Commonwealth v. Ruiz*, 2230 MDA 2012, at 1-3 (Pa. Super. Oct. 9, 2013) (footnote omitted). Appellant timely appealed; he challenged the weight of the evidence and whether the court erred by not severing the trial. This Court affirmed on October 9, 2013, but vacated the judgment of sentence for robbery. Appellant did not file a petition for allowance of appeal with our Supreme Court.

Appellant filed a timely, counseled PCRA petition on Monday, November 10, 2014. *See* 1 Pa.C.S. § 1908 (stating last day of time-period cannot fall on weekend or legal holiday). Following an evidentiary hearing, at which the district attorney and Appellant's trial counsel testified, the court denied Appellant's petition on October 3, 2015. Appellant timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

Appellant raises the following issues:

- 4 -

Whether Appellant was deprived of his constitutional right to effective assistance of counsel when his trial attorney failed to request a mistrial, or the alternative, request to have the remaining jurors colloquyed to ensure they were not tainted by the proceedings and could be fair and impartial after juror number 8 disclosed she was aware of the witnesses and areas discussed during the trial?

Whether Appellant was deprived of his constitutional right to effective assistance of counsel when his trial attorney failed to request a **Frye** hearing to present expert witness identification testimony on the only eyewitness to identify the Appellant?

Appellant's Brief at 5 (footnote omitted).

We summarize Appellant's arguments for both of his issues. Appellant contends he was prejudiced because trial counsel failed to request a mistrial after a juror was dismissed. He alternatively claims counsel was ineffective by failing to have the remaining jurors questioned to ascertain their fairness and impartiality after a juror was removed. Appellant also claims that in a case issued subsequent to his trial, **Commonwealth v. Walker**, 92 A.3d 766 (Pa. 2014), our Supreme Court held the trial court had the discretion to permit expert testimony on eyewitness identification. He concedes that although counsel cannot be found ineffective for failing to anticipate a change in the law, the **Walker** holding is sufficiently significant that he is entitled to a new trial. We decline to grant Appellant relief.

"On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are

supported by the record and without legal error." ***Commonwealth v. Abu-Jamal***, 941 A.2d 1263, 1267 (Pa. 2008) (citation omitted).

> [C]ounsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) [the petitioner] was prejudiced by counsel's action or omission. To demonstrate prejudice, [the petitioner] must prove that a reasonable probability of acquittal existed but for the action or omission of trial counsel. A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. Further, a PCRA petitioner must exhibit a concerted effort to develop his ineffectiveness claim and may not rely on boilerplate allegations of ineffectiveness.

***Commonwealth v. Perry***, 959 A.2d 932, 936 (Pa. Super. 2008) (punctuation and citations omitted).

After careful review of the parties' briefs, the record, and the well-reasoned decision by the Honorable Bernard Coates, Jr., we affirm on the basis of the PCRA court's decision. ***See*** PCRA Ct. Op., 9/3/15, at 4-7 (holding (1) juror testified she did not discuss her knowledge with the jury; (2) trial counsel opined insufficient basis for mistrial and did not believe juror lied; and (3) trial counsel had no reason to anticipate change in law). Furthermore, we note the overwhelming evidence of guilt including eyewitness testimony from, *inter alia*, the victim's fiancée, who was present at the shooting, and surveillance video. ***See Ruiz***, 2230 MDA 2012, at 1-3. Accordingly, having discerned no error, we affirm. ***See Abu-Jamal***, 941 A.2d at 1267.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2016