J-A20016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.B., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1412 WDA 2016 |

Appeal from the Order Entered August 23, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-JV-0001836-2015

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                 **FILED SEPTEMBER 21, 2018**

A.B. appeals from the disposition order, entered in the Court of Common Pleas of Allegheny County, following his adjudication of delinquency on charges of involuntary deviate sexual intercourse with a child, aggravated indecent assault of a child, and sexual assault.  After our review, we affirm.

A.B. was charged with one count each of involuntary deviate sexual intercourse with a child, one count of aggravated indecent assault of a child, and one count of sexual assault (F2).  At the hearing, the victim testified that when he was ten years old, he was playing video games with A.B., who was his uncle.  They were left alone while his mother and grandmother went grocery shopping and his other uncle went to walk the dogs.  The victim testified that he and A.B. were both sitting in chairs playing the video game, and he noticed that A.B. was playing with "his private part."  N.T. Adjudication Hearing, 5/19/16, at 103.  The victim testified that he got up to get something

to drink and he felt A.B.'s hands on his hips. He stated that A.B. pulled the victim's pants down, forced him to his knees and "penetrated" him in "his butt." *Id.* at 106. The victim testified that it hurt, he told A.B. to stop and tried to push A.B. off. After A.B. stopped, he told the victim, "If you tell someone, I'll hurt you." *Id*. at 106-108.

Following an adjudicatory hearing before the Honorable Guido A. DeAngelis, the court entered a dispositional order finding A.B. delinquent as charged. A.B.'s trial counsel did not file post-dispositional motions and, instead, filed a motion to withdraw on September 9, 2016. The trial court denied the motion and ordered counsel to file a notice of appeal and then seek substitution. Counsel filed a timely appeal on A.B.'s behalf, as well as a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Counsel again sought to withdraw, and this Court granted counsel's request and remanded for appointment of counsel.

Upon remand, the public defender entered his appearance in this Court and, on February 21, 2017, sought remand for the filing of post-dispositional motions *nunc pro tunc*, raising trial counsel's ineffectiveness for failing to conduct a voir dire of the eleven-year-old victim with respect to his competency to testify at the adjudicatory hearing. This Court remanded the matter, and the trial court held an ineffectiveness hearing on October 17, 2017.

At the conclusion of the ineffectiveness hearing, the court stated that it would take the matter under advisement and scheduled a subsequent

proceeding. At that subsequent proceeding, which was held on February 20, 2018, the court pronounced its findings of fact and conclusions of law, ultimately denying A.B.'s ineffectiveness claim.[1] On appeal, A.B. challenges that ruling and raises the following issue for our review:

> Whether the juvenile court erred in denying A.B.'s request for a new adjudicatory hearing based on trial counsel's ineffectiveness when the record makes clear that trial counsel completely refused to examine the purported victim, an 11-year-old child who suffered from a debilitating psyc[h]opathology that affected his reasoning and judgment, and, instead, just stipulated that the child was competent, even though Pennsylvania law requires a child under 14 years of age to be evaluated for competency [and] the test for competency requires some evidence that the child possessed a consciousness of the duty to speak the truth, but no such evidence was ever brought out during the Commonwealth's examination of the child?

Appellant's Brief, at 6.

Counsel is presumed to have provided effective representation unless it is established that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) appellant was prejudiced by counsel's action or omission. ***Commonwealth v. Perry***, 959 A.2d 932, 936 (Pa. Super. 2008). In order to prove prejudice here, A.B. must

---

[1] In our August 2, 2018 judgment order, this Court determined that the notes of testimony from the February 20, 2018 proceeding, to which both parties and the trial court referred and which were required for our review, had not been included in the certified record on appeal. The court had adopted those findings and conclusion stated in that proceeding as its opinion. We remanded this case to the court of common pleas with directions the omission be corrected and a supplemental record, if available, be certified and transmitted within fourteen (14) days. ***See*** Pa.R.A.P. 1926(b)(1). Counsel has complied with that order. The notes of testimony from the February 20, 2018 are now part of the certified record on appeal.

establish that, had counsel not stipulated to competency, the result would have been different.

A party who challenges the competency of a minor witness must prove by clear and convincing evidence that the witness lacks "the minimal capacity . . . (1) to communicate, (2) to observe an event and accurately recall that observation, and (3) to understand the necessity to speak the truth." **Commonwealth v. Delbridge**, 855 A.2d 27, 40 (Pa. 2003), citing **Rosche v. McCoy,** 156 A.2d 307 (Pa. 1959).  **See Commonwealth v. D.J.A.**, 800 A.2d 965, 969 (Pa. Super. 2002) ("Competency of a witness is presumed, and the burden falls on the objecting party to demonstrate incompetency.").

First, we point out that A.B.'s characterization of the issue here, referring to the victim's "debilitating psychopathology," is misleading.  A child's nightmares, which in this case intensified after the assault, do not amount to debilitating psychopathology.  This argument is a red herring.

At the adjudicatory hearing, prior to the victim's direct examination, the prosecutor asked the victim a series of foundational questions.  He responded correctly to general questions about his age, his birthdate, his school, and his grades ("As and Bs and one C.").  **See** N.T. Adjudicatory Hearing, **supra** at 90-93.  The victim also indicated that he understood that it was bad to break rules at school, that he would be punished if he broke the rules, that one of the rules in court is that you have to tell the truth, and that he understood the difference between the truth and a lie.  **Id.** at 93-94.  Following the

questioning, defense counsel declined the court's offer to voir dire with respect to competency, and stipulated to the witness's competency. ***Id.*** at 94.

At the ineffectiveness hearing held on October 17, 2017, when questioned as to why he stipulated to the witness's competency to testify, defense counsel explained, at length, the reasoning behind his decision:

> A:  I had the ability to watch him. I had the ability to watch direct examination. **I had the ability to see the forensic examination, the video of him. And I found him at that point in my professional opinion as a credible and competent witness. I understood that he believed the difference between a truth and a lie and why he was here in court.**
>
> Q. So, you felt that he knew the difference between the truth and a lie. What about his understanding of his duty to tell the truth?
>
> A. I think there was nothing to lead me to believe he did not understand that he was here to tell the truth.
>
> Q. And had you decided to voir dire him, did you have concerns that if you voir dired him, that you may actually end up have hurting [A.B.'s] case.
>
> A. **I think if I voir dired him, it probably just would have been repetitious because I believe he was competent. And there was an issue with the nightmares that I believe could have hurt [A.B.'s] case in reference to how they seemed to intensify after the alleged incident.**
>
> Q. Right. So as a result, you felt it was not prudent to challenge or explore [the victim's] consciousness of the duty to speak the truth?
>
> A. **It was my opinion that he appeared to be competent to testify as a witness for the Commonwealth.**
>
> &ast; &ast; &ast; &ast;
>
> A. I explained to [A.B.], and he had also seen the forensic video of [the victim], that [the victim] was a very credible witness. He came off very well. And that this was a classic he said/she said

type of case where the Court is going to determine if in fact it happened. I think critical in the case was the fact that [the victim's] own mother was going to corroborate our testimony. And when that didn't happen, that hurt the defense during the course of the trial. . . . But I don't believe I would have stipulated unless I felt that the Commonwealth had done an adequate job voir diring the witness.

Q. And you testified that you actually received a copy of the forensic interview of the victim []?

A. Yes.

Q. You reviewed that?

A. I watched it.

Q. And then you watched it with the defendant, [A.B.]?

A Yes.

Q Who else was present if anyone when you watched that with him?

A. No one. Because a protective order indicated that that only two of us would have been able to witness and watch that.

Q And when you were watching that with him, did he have any questions for you?

A No. He was actually very quiet and watched it.

Q What did you guys discuss either during or after you watched that forensic interview of the victim?

A. We had discussed the fact that [the victim] was very credible. That we may not have agreed with what he said, but he came off as a credible witness and there were some concerns about him testifying in accordance with what he said in the interview. . . . **[T]he advantage that I had with [the victim] was seen before trial in seeing the forensic interview, knowing what he was going to say and the manner he said it. Whether he had good eye contact. Whether he looked down. Did not look up. So, there was a lot of indications in the ability to tell the truth and be able to look straight in somebody's eye and say something**. . . .

Q. So, I guess I should break it up. In the instance where you observed him in the forensic interview, was there any doubt in your mind just based on that video whether he would be competent to testify at trial?

A. There was no issue. **Like I said, he was competent and very credible in his witness interview.**

Q. What about when he testified at trial. Based upon the different environment and sort of the escalation of the emotions that exist during the trial, did you have any hesitation about whether his testimony at trial raised an issue as to his competence?

A. **Very competent. Credible witness. Good eye contact with the Judge. He was very calm and essentially recounted what he said in the interview.**

Q. If you would have had any indication or concern would you have immediately raised it?

A. If I didn't think he was competent, I certainly would have done extended voir dire on him.

Q. Is that something you have done in the past in your 20 or 30 cases with child victim witnesses?

A. Yes.

N.T. Ineffectiveness Hearing, 10/17/17, at 17-45 (emphasis added).

Our review of the record reveals that the prosecutor established that the victim possessed the ability to communicate and supply clear answers, observe and recall events, and understood the difference between the truth and a lie. *Delbridge*, *supra*; *D.J.A.*, *supra*. At trial, the victim testified that he understood the duty to speak the truth and he demonstrated the ability to communicate and observe and remember the details of the sexual assault by his uncle, A.B., also a minor. As such, there was no need to conduct a further colloquy. *See In Interest of J.R.*, 648 A.2d 28, 31 (Pa. Super. 1994)

(four-year-old victim of alleged sexual assault was competent to testify in juvenile delinquency proceeding against her 13–year-old cousin); **see also Commonwealth v. Gaerttner**, 484 A.2d 92 (Pa. Super. 1984) (ten–year–old victim of sexual assault, who was eleven years old at time of testifying, was competent witness; defense counsel could not be found ineffective for failing to raise issue of competency). A.B. has not pointed to a single instance in the victim's testimony which would create a serious doubt about the victim's ability to explain the details of the assault in a competent manner.

Further, where, as here, the fact finder is a judge, and the court determined the child victim was competent to testify, A.B. has failed to show prejudice. **Perry**, **supra**. The trial court set forth the following findings and conclusions at the February 20, 2018 proceeding:

> [Defense counsel] testified credibly that he had handled over 100 cases of sexual assault. During his over 20 years of practice, he had observed victims of tender years testify on many occasion. Prior to the [adjudication], counsel observed the Victim's behavior by way of observation of the forensic interview, which he viewed with A.B., his client. Counsel opined that the forensic interview showed the Victim to be credible, a fact he relayed to A.B. At the time of the alleged incident, the Victim was not known by trial counsel to have any mental health issues. Though the Victim began experiencing nightmares, counsel made a reasonable strategic decision not to pursue that avenue of questioning in that the nightmares may have been a result of the sexual assault by A.B. At the time of the hearing, counsel testified that in his professional opinion the Victim was competent based upon his observations. Counsel testified that the Victim maintained good eye contact, was calm, and consistent in his testimony. This Court, as well as defense counsel, observed the Victim during the hearing and is of the opinion that the Victim was competent to testify. . . Prior to the testimony of the Victim, the Commonwealth conducted voir dire of the Victim and that testimony, coupled with

the observations of the forensic interview, led counsel to his conclusion of competency. The Victim was competent to testify, and counsel had a reasonable strategy to stipulate to competency.

Findings of Fact, 2/20/18, at 5-7. The court's findings are fully supported in the record. We agree with the trial court's determination that the child witness was competent to testify and no purpose would have been served by an additional formal colloquy. *See Commonwealth v. Smith*, 167 A.3d 782 (Pa. Super. 2017) (petitioner failed to demonstrate prejudice resulting from trial counsel's failure to object to competency of 11-year old victim to testify at trial for rape of child and other sex offenses).

In conclusion, the record confirms that eleven-year-old victim fulfilled the three requirements of competency, *Delbridge*, *supra*, and A.B. has failed to establish prejudice as a result of defense counsel's stipulation. We conclude, therefore, that A.B.'s claim of counsel's ineffectiveness for failing to challenge the victim's competency fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/21/2018