J-S79015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE ARNALDO TORRES-RIVERA | : | |
| | : | |
| Appellant | : | No. 1263 MDA 2018 |

Appeal from the Order Entered July 16, 2018
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0001903-2009

BEFORE: SHOGAN, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.: **FILED APRIL 15, 2019**

Appellant, Jose Arnaldo Torres-Rivera, appeals *pro se* from the order denying his motion for DNA testing filed pursuant to Section 9543.1[1] of the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.[2] We affirm.

Previously, the PCRA court summarized the underlying facts of this matter as follows:

> On March 1, 2009, a man, Carmelo Isasas Muniz, was shot outside the Puerto Rican Civic Association (hereinafter, Club). A shell casing from a .22 caliber firearm was found near the victim.

---

[1] Section 9543.1 of the PCRA provides that convicted defendants serving a term of imprisonment may move for "the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction." 42 Pa.C.S. § 9543.1(a)(1).

[2] We observe that "petitions for post-conviction DNA testing are unique in that the petition does not carry with it the right to counsel." *Commonwealth v. Perry*, 959 A.2d 932, 938 (Pa. Super. 2008) (citing *Commonwealth v. Brooks*, 875 A.2d 1141, 1147 (Pa. Super. 2005)).

Other shell casings were found later at the scene. Mr. Muniz was a resident of Florida; he was not a member of Club. He gained admittance as Ms. Edna Rivera's guest. The victim was under the influence of alcohol and cocaine at the time of his death. A video from a surveillance camera located at a neighboring food market captured the shooting. Ms. Rivera, [Appellant's] paramour, identified [Appellant] as the shooter in the surveillance video.

[Appellant] was arrested at his place of employment. He speaks only Spanish, so all of his conversations with the police officers went through a translator. [Appellant] admitted that he had killed the victim and signed and dated his handwritten statement. The criminal investigator did not inform [Appellant] that the police had a video of the shooting. According to [Appellant], he had consumed about twelve bottles of beer at the Club. [Appellant] contended that the victim and three other people had left the Club at the same time as he had. The victim had pushed him, and [Appellant] had fallen to the ground. [Appellant] had then encountered a man who had handed him a black handgun with some bullets that [Appellant] had put inside the gun. [Appellant] stated that his mind had gone blank when the man had handed the gun to him. [Appellant] had then returned to the Club and had shot the victim. [Appellant] had returned the gun back to the owner after the shooting and had walked home.

[Appellant] also described his clothing and where it was located. The police recovered the clothing where [Appellant] had indicated. The clothing matched the clothing worn by the shooter in the video. [Appellant] further claimed that he had told his mother about the incident, but his mother had informed the criminal investigator that [Appellant] had never admitted to her that he had killed anyone.

[Appellant] has a verbal I.Q. score of 65 which places him in the mildly mentally retarded range. [Appellant] did not graduate from high school or obtain a G.E.D. He ended school due to his age. Dr. Frank M. Dattilio, a clinical and forensic psychologist, found that [Appellant] understands the difference between right and wrong and that a person with [Appellant's] scores has the ability, to some degree, to form the intent to hurt someone.

Dr. Larry Rotenberg, a physician specializing in the field of psychiatry and forensic psychiatry, examined [Appellant]. He found that [Appellant] gave different versions of the shooting to different people; [Appellant] claimed to Dr. Rotenberg that he had lied to all the other people about the shooting. [Appellant] has a significant psychiatric history consisting of several attempts to hang himself. Dr. Rotenberg testified that to a reasonable degree of psychiatric certainty as to [Appellant's] state of mind, the shooting had occurred in the heat of passion, with sufficient provocation, and with no time for reflection.

The Commonwealth did not present any expert witnesses, so the testimony of Dr. Rotenberg and Dr. Dattilio was uncontroverted.

PCRA Court Opinion, 2/9/12, at 1-3.

On August 17-20, 2010, a jury convicted Appellant of first-degree murder and firearms not to be carried without a license.[3] On September 23, 2010, the trial court sentenced Appellant to serve a term of life imprisonment for the first-degree murder conviction and a concurrent sentence of twenty to forty months for the firearms violation. Appellant filed post-sentence motions, which were denied. Appellant then filed a direct appeal, which he discontinued on March 15, 2011.

On March 22, 2011, Appellant filed a timely PCRA petition. Following a hearing, the PCRA petition was denied on February 9, 2012. On September 12, 2012, this Court affirmed the order denying the PCRA petition, and our Supreme Court denied Appellant's petition for allowance of appeal on April 9, 2013. **Commonwealth v. Torres-Rivera**, 378 MDA 2012, 60 A.3d 850 (filed

_____

[3] 18 Pa.C.S. §§ 2502(a) and 6106(a)(1), respectively.

- 3 -

September 12, 2012) (unpublished memorandum), *appeal denied*, 64 A.3d 632 (Pa. 2013). Appellant filed a petition for writ of *certiorari*, which the United States Supreme Court denied on October 7, 2013. ***Torres-Rivera v. Pennsylvania***, 571 U.S. 859 (2013).

On June 3, 2016, Appellant filed a petition for writ of *habeas corpus*. The court treated the petition as a PCRA petition and appointed counsel. Counsel then filed a motion for leave to withdraw and a ***Turner***/***Finley*** no-merit letter. Appellant filed a response to the request to withdraw. On September 27, 2016, the PCRA court issued notice of its intent to dismiss the PCRA petition and granted counsel's request to withdraw. The record reflects no further action was taken with regard to the second PCRA petition.[4]

---

[4] We note our Supreme Court has long held that "a subsequent PCRA petition cannot be filed until the resolution of review of the pending PCRA petition by the highest state court in which review is sought, or upon the expiration of the time for seeking such review." ***Commonwealth v. Lark***, 746 A.2d 585, 588 (Pa. 2000). Although a motion for DNA testing under Section 9543.1 "falls under the aegis" of the PCRA, ***Commonwealth v. Kunco***, 173 A.3d 817, 823 (Pa. Super. 2017), this Court has differentiated between a motion under Section 9543.1 and a petition for relief filed under Section 9543. In ***Commonwealth v. McLaughlin***, 835 A.2d 747 (Pa. Super. 2003), we explained that a Section 9543.1 motion was not a PCRA petition, but rather "allows for a convicted individual to first obtain DNA testing which could then be used within a PCRA petition." *Id*. at 750. ***See also In re Payne***, 129 A.3d 546, 553 n.11 (Pa. Super. 2015) ("Though brought under the general rubric of the PCRA, motions for post-conviction DNA testing are 'clearly separate and distinct from claims brought pursuant to other sections of the PCRA.'"). Accordingly, the fact that a final order disposing of Appellant's second PCRA petition is not in the certified record does not present a jurisdictional impediment to our review.

On July 5, 2018, Appellant filed, *pro se*, the instant motion seeking DNA testing.[5]  The motion was denied on July 16, 2018.  This timely appeal followed.  Both Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our review:

> THE LOWER COURT ABUSED ITS DISCRETION WHEN IT DENIED THE MOTION FOR DNA TESTING FILE BY THE APPELLANT. THE RECORD IS ABSOLUTELY CLEAR THAT THE LOWER COURT ABUSED ITS DISCRETION BY DENYING THE MOTION. SEE ORDER IN QUESTION, PAGE 2 OF THIS BRIEF AND ALSO SEE ATTACHED ORDER IN APPENDIX SECTION OF THIS BRIEF.

Appellant's Brief at 3 (verbatim, capitalization in original).

In his sole issue, Appellant argues that the PCRA court erred in denying his motion for DNA testing.  Appellant's Brief at 6-10.  Essentially, Appellant contends that the PCRA court abused its discretion in summarily denying his motion.  Appellant asserts that "the lower court dismissed the motion for DNA testing without addressing the facts that are in the motion …" ***Id***. at 8 (full

---

[5]  We also observe that "[t]he one year jurisdictional time bar that exists under the [PCRA] does not apply to motions for the performance of forensic DNA testing under Section 9543.1." ***Commonwealth v. Conway***, 14 A.3d 101, 108 n.2 (Pa. Super. 2011) (citing ***Commonwealth v. Brooks***, 875 A.2d 1141, 1146 (Pa. Super. 2005)).  This Court has explained that a petition for post-conviction DNA testing does not directly create an exception to the one-year time bar under 42 Pa.C.S. § 9545; however, if granted, it "allows for a convicted individual to first obtain DNA testing which could then be used within a PCRA petition to establish new facts in order to satisfy the requirements of an exception under 42 Pa.C.S.A. § 9545(b)(2)." ***Commonwealth v. Weeks***, 831 A.2d 1194, 1196 (Pa. Super. 2003) (citing 42 Pa.C.S. § 9543.1(f)(1)).

capitalization omitted). Appellant asserts that DNA testing "would provide the identity of the real killer." *Id*. (capitalization and underlining omitted).

Initially, we observe that, in 1992, this Court recognized the viability of DNA testing as an evidentiary tool for the first time. *Commonwealth v. Brison*, 618 A.2d 420, 425 (Pa. Super. 1992); *Commonwealth v. Rodgers*, 605 A.2d 1228, 1234-1235 (Pa. Super. 1992). Our review of the PCRA court's decision regarding a Section 9543.1 motion for DNA testing "permits us to consider only whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error." *Commonwealth v. Kunco*, 173 A.3d 817, 823 (Pa. Super. 2017) (citation omitted). We may affirm the PCRA court's decision "if there is any basis to support it, even if this Court relies on different grounds to affirm." *Id*.

Subsection (a)(2) of Section 9543.1 of the PCRA "sets forth several threshold requirements to obtain DNA testing." *Commonwealth v. Walsh*, 125 A.3d 1248, 1254 (Pa. Super. 2015) (quoting *Commonwealth v. Williams*, 35 A.3d 44, 49 (Pa. Super. 2011)). The subsection requires that the evidence be available for testing as of the date of the motion, and that the petitioner must prove the following:

> If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his

client was indigent and the court refused the request despite the client's indigency.

42 Pa.C.S. § 9543.1(a)(2).

Therefore,

[t]he statute sets forth several threshold requirements to obtain DNA testing: (1) the evidence specified must be available for testing on the date of the motion; (2) if the evidence was discovered prior to the applicant's conviction, it was not already DNA tested because (a) technology for testing did not exist at the time of the applicant's trial; (b) the applicant's counsel did not request testing in a case that went to verdict before January 1, 1995; or (c) counsel sought funds from the court to pay for the testing because his client was indigent, and the court refused the request despite the client's indigency. 42 Pa.C.S.A. § 9543.1(a)(2).

*Williams*, 35 A.3d at 49.

Our review of the record reflects that Appellant has requested DNA testing of blood swabs recovered from the crime scene that are located in a police evidence room. Motion, 7/5/18, at 1-3. Thus, Appellant has asserted that the evidence is available for testing, and the Commonwealth has not challenged this point. Accordingly, Appellant has met the first requirement.

Regarding the next requirement, Appellant has failed to allege that this evidence was first discovered after his trial in 2010. Moreover, because the blood swabs were collected from the scene of a murder that occurred on March 1, 2009, and Appellant's trial was held in August of 2010, we conclude that this evidence was discovered prior to Appellant's conviction. Therefore, Appellant is required to prove that the evidence was not already subjected to

DNA testing due to one of the three enumerated reasons set forth in Subsection 9543.1(a)(2).

As it relates to Appellant's statutory obligations, Appellant does not assert, much less demonstrate that: 1) DNA testing technology was not available at the time of his trial in 2010; 2) he was convicted prior to 1995 and counsel failed to request testing; or 3) he was indigent and the trial court denied his request for funds to pay for DNA testing prior to trial. 42 Pa.C.S. § 9543.1(a)(2). Appellant simply ignores these threshold components of the post-conviction DNA statute. Accordingly, Appellant's motion does not meet the necessary requirements for DNA testing under the PCRA. Hence, the PCRA court did not err in denying Appellant's petition for DNA testing. ***See Commonwealth v. Perry***, 959 A.2d 932, 939 (Pa. Super. 2008) (no relief when petitioner failed to satisfy the conditions outlined in § 9543.1(a)(2)); ***Commonwealth v. Walsh***, 125 A.3d 1248, 1257 (Pa. Super. 2015) (same).

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/15/2019