J-S41005-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT WAYNE BROWN | : | |
| | : | |
| Appellant | : | No. 1972 MDA 2019 |

Appeal from the Order Entered November 6, 2019,
in the Court of Common Pleas of Cumberland County,
Criminal Division at No(s): CP-21-CR-0003516-2010.

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT WAYNE BROWN | : | |
| | : | |
| Appellant | : | No. 1973 MDA 2019 |

Appeal from the Order Entered November 6, 2019,
in the Court of Common Pleas of Cumberland County,
Criminal Division at No(s): CP-21-CR-0000029-2011.

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED DECEMBER 01, 2020**

Robert Wayne Brown appeals *pro se* from the order denying his motion

for post-conviction DNA testing filed pursuant to section 9543.1 of the Post

Conviction Relief Act. 42 Pa.C.S.A. §§ 9541-9546. We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

Brown's convictions are the result of forty-one charges he faced at two different criminal dockets. Previously, this Court has detailed the pertinent facts and procedural history as to each docket as follows:

Brown's convictions arise from his sexual abuse of his grandchildren and step grandchildren. On December 1, 2010, Brown was babysitting his granddaughters, T.W. (age three) and K.W. (age four). When T.W. and K.W.'s mother, T.N. went to Brown's home in Newville, Pennsylvania to pick up the girls, she observed Brown with his pants unbuttoned and unzipped. T.W. was standing between Brown's legs with her pants undone, and K.W., was facing the wall with her pants around her ankles. T.N. immediately removed the children from Brown's home, and took them to Carlisle Regional Medical Center.

At the hospital, Joey Wisner, PA, examined the children and noticed three "warty lesions" near K.W.'s upper lip. Wisner took external mouth swabs from both children, which Pennsylvania State Police Corporal Bryan Henneman took into evidence along with K.W.'s pants. Laboratory testing later revealed the presence of seminal fluid on K.W.'s pants, and the swab from K.W.'s mouth contained spermatozoa. However, due to the breakdown and mixing of genetic material, the lab could not conclusively match those samples with Brown's DNA.

On the same evening, Corporal Henneman went to Brown's residence, identified himself, and asked to speak with Brown. Corporal Henneman was dressed in formal business attire. Corporal Henneman told Brown that he was not under arrest. Brown agreed to speak with Corporal Henneman, and invited him inside the home.

Corporal Henneman digitally recorded the audio of his ensuing conversation with Brown. In that conversation, Brown admitted that K.W. and T.W. had touched his penis on multiple occasions. He also stated that both K.W. and T.W. had performed oral sex on him, and that he had performed oral sex on K.W. on one occasion. Brown told Corporal Henneman that he had a wart-like growth on [his] penis, but did not know what it was. At the conclusion of the interview, Corporal Henneman left Brown's home.

On December 2, 2010, Corporal Henneman arrested Brown and charged him with two counts each of involuntary deviate sexual intercourse ("IDSI"), IDSI with a child less than thirteen years of age, unlawful contact with a minor, sexual assault, indecent assault, indecent assault of a child less than thirteen years of age, and corruption of minors. Those charges were filed and docketed at CP-21-CR-3516-2010.

*Commonwealth v. Brown*, 135 A.3d 652 (Pa. Super. 2015), unpublished memorandum at 2-4 (footnote and citation to the record omitted).

This Court summarized the pertinent facts and procedural history regarding the remaining docket number as follows:

On December 6, 2010, Brown's step grandchildren, [siblings] J.H. and M.H, after hearing about Brown's arrest and the sexual abuse allegations against him, reported to [the] police that Brown had sexually assaulted them as well. On that same day, Corporal Henneman interviewed J.H. and M.H. J.H. told Corporal Henneman that, on multiple occasions when he was approximately ten to twelve years old, Brown performed oral sex on J.H. Brown also forced J.H. to perform oral sex on him. J.H. told Corporal Henneman that Brown had inserted his fingers, various sex toys, and his penis into J.H.'s anus.

M.H. corroborated her brother's allegations. She told Corporal Henneman that, on multiple occasions when she was approximately eight to ten years old, Brown performed oral sex on her. Brown also forced M.H. to perform oral sex on him. Brown penetrated M.H.'s vagina and anus with his fingers and with various sex toys. M.H. also told Corporal Henneman that, on one occasion, Brown inserted his penis into her anus. On December 9, 2010, Corporal Henneman filed a second criminal complaint, charging Brown with rape of a child, IDSI, IDSI with a child less than thirteen years of age, indecent assault, aggravated indecent assault, unlawful contact with a minor, and corruption of minors. Those charges were filed and docketed at CP-21-CR-29-2011.

***Brown***, unpublished memorandum at 4-5 (footnotes omitted).

Prior to trial, the Commonwealth filed notice of its intent to seek mandatory minimum sentences if a jury convicted Brown of several of the sex offenses. The Commonwealth consolidated the two dockets for trial, which began on August 20, 2012. Two days later, the jury convicted Brown on all of the charges. On April 4, 2013, the trial court sentenced Brown to an aggregate term of 40 to 120 years of imprisonment. Brown did not file a direct appeal, however, after he filed a PCRA petition, his right to appeal was reinstated *nunc pro tunc*.

On appeal, Brown's counsel filed a petition to withdraw and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), asserting that Brown's appeal was wholly frivolous. This Court disagreed, concluding that Brown's aggregate sentence included mandatory minimums, which this Court in ***Commonwealth v. Wolfe***, 106 A.3d 800 (Pa. Super. 2014), had declared unconstitutional. ***See Brown***, unpublished memorandum at 15-19. Thus, this Court vacated Brown's judgment of sentence and remanded for resentencing. On August 23, 2016, our Supreme Court denied the Commonwealth's petition for allowance of appeal. ***Commonwealth v. Brown***, 145 A.3d 723 (Pa. 2016).

Following remand, at resentencing, the trial court expressly stated that it had not imposed any mandatory minimums as part of its original aggregate sentence. ***See*** Resentencing Order, 11/15/16, at 1. The court therefore reimposed its 40 to 120 year sentence. Brown filed a timely appeal to this

Court in which he challenged the discretionary aspects of his sentence. In an unpublished memorandum filed on August 23, 2017, we concluded that Brown's failure to file a post-sentence motion waived his sentencing claim. We therefore affirmed his judgment of sentence. *Commonwealth v. Brown*, 175 A.3d 1107 (Pa. Super. 2017). On February 5, 2018, our Supreme Court denied Brown's petition for allowance of appeal. *Commonwealth v. Brown*, 181 A.3d 284 (Pa. 2018).

On August 26, 2019, Brown filed the petition at issue, titled a "Petition to Retest DNA." In his one-page petition, Brown requested that the DNA in his case be retested pursuant to Section 9543.1 of the PCRA because "certain results were deemed inconclusive," and the newly amended statute allowed for testing "with Newer Technology that could produce [substantially] more Accurate and Probative results." Petition, 8/26/19, at 1. The Commonwealth filed a response. By order entered November 5, 2019, the PCRA court denied the petition. On October 7, 2019, Brown filed an amended petition, in which he specified the evidence to be retested and asserted his innocence. This *pro se* appeal followed.[1] Both Brown and the PCRA court have complied with Pa.R.A.P. 1925.

_____

[1] No violation of our Supreme Court's decision in *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018) occurred in this case. Brown filed separate notices of appeal for each docket, and, although he included both docket numbers on each appeal, this fact is no longer a basis for quashal. *See generally*, *Commonwealth v. Jerome Johnson*, 236 A.3d 1141 (Pa. Super. 2020) (*en banc*).

Brown raises the following issues:

1) Did [Brown] state his request under [Section] 9543.1 clearly?

2) Was the original DNA test inconclusive?

3) Does [Brown] have [the] right to DNA testing?

4) Did [Brown's] trial counsel consult [an] expert in the case or seek comparative testing?

5) Did [Brown] receive[a] raw data report and DNA original test results with his discovery?

6) Did the [victims] in the case make a complaint or statement saying they were abused?

7) Are there conflicting statements and interviews and property records regarding evidence collected?

8) Did the trial court [err] in denying motion to test DNA?

Brown's Brief at 2 (excess capitalization omitted).

As noted by the Commonwealth, only the issues involving the DNA testing are properly before this Court. **See** Commonwealth's Brief at 6-10. **See also Commonwealth v. Walsh**, 125 A.3d 1248, 1252 (Pa. Super. 2015) (explaining, "Section 9543.1 cannot be used to raise extraneous issues not related to DNA testing in an effort to avoid the one-year [PCRA] time bar"). Thus, we limit our review to the denial of Brown's petition for DNA testing.

Our standard of review is well settled:

Generally, the trial court's application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law. When reviewing an order denying a motion for post-conviction DNA testing, this Court determines whether the [applicant] satisfied the statutory requirements listed in Section 9543.1. We can affirm the court's decision if there is any

basis to support it, even if we rely on different grounds to affirm.

***Walsh***, 125 A.3d at 1252-53.

Petitions for post-conviction DNA testing are governed by statute. Section 9543.1 of the PCRA provides, in pertinent part:

**§ 9543.1.  Postconviction DNA testing**

**(a)  Motion.—**

(1)    An individual convicted of a criminal offense in a court of this Commonwealth may apply by making a written motion to the sentencing court at any time for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2)    The evidence may have been discovered either prior to or after the applicant's conviction.  The evidence shall be available for testing as of the date of the motion.  If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where the verdict was rendered on or before January 1, 1995, or the evidence was subject to testing, but newer technology could provide substantially more accurate and substantively probative results, or the applicant's counsel sought funds from the court to pay for the testing because he was indigent and the court refused the request despite the client's indigency.

(3)    A request for DNA testing under this section shall be by written petition and shall be filed with the clerk of courts of the judicial district where the sentence is imposed.

(4)    DNA testing may be sought at any time if the motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

42 Pa.C.S.A. § 9543.1(a).

Section 9543.1(c)(3), provides, in pertinent part, that, when filing a motion for post-conviction DNA testing, an applicant must present a *prima facie* case demonstrating that the:

(i)     identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing, and

(ii)    DNA testing of the specific evidence, assuming exculpatory results, would establish:

(A)    the applicant's actual innocence for which the applicant was convicted[.]

42 Pa.C.S.A. § 9543.1(c)(3).

Finally, as provided in Section 9543.1(d)(2)(i), the PCRA "court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, . . . the court determines that there is no reasonable probability, that the testing would produce exculpatory evidence that . . . would establish the applicant's actual innocence of the offense for which the applicant was convicted[.]" 42 Pa.C.S.A. § 9543(d).

Here, the PCRA court found that Brown failed completely to establish a *prima facie* case in his one-page motion. Initially, the court explained:

The facts leading to the obtaining of the original samples alone were incriminatory before any testing. Specifically,

- 8 -

[Brown] was caught in his home office with his pants undone and a four year old child, who[se] pants were also undone, standing between his legs and with a three year old child in the same room standing facing a wall with her pants down to her ankles and those children were immediately taken to a hospital where the samples were collected and subsequently tested for DNA. Now, [Brown] untimely requests the DNA evidence used in his cases be re-tested; without legal foundation he claims newer DNA technology can produce substantially more accurate and probative results.

PCRA Court Opinion, 1/3/20, at 1-2.

The PCRA court then cited the relevant provisions of Section 9543.1 and concluded:

Instantly, [Brown] fails to meet the requirements of subsection (a)(2) because his convictions are well after January 1, 1995, DNA testing was available and performed in his case, and he provides no explanation how DNA testing now is any different than the testing performed less than ten (10) years ago. The one sample collected was too diluted for viable DNA results and the second could not exclude [Brown] from the pool of sample genetic material found.

Further, after considering the credible testimony of the eyewitness who discovered [Brown] in the act of sexually assaulting his grandchildren, and review of the record of [Brown's] trial, there is no reasonable probability that the requested testing would produce exculpatory evidence establishing [Brown's] actual innocence.

[Brown's] request is merely to delay the execution of a lawful sentence and administration of justice. As [Brown's] appeal is meritless, it should be denied.

*Id.* at 3.

Our review of the record supports the PCRA court's conclusions that Brown's post-conviction DNA testing is untimely and that he cannot meet the requirements of Section 9543.1(a).

Section 9543.1(d)(iii) requires the applicant to make a timely request for DNA testing. "In analyzing timeliness for purposes of Section 9543(d)(1)(iii), the court must consider the facts of each case to determine whether the applicant's request for post-conviction DNA testing is to demonstrate his actual innocence or to delay the execution of sentence or administration of justice." *Walsh*, 125 A.3d at 1255 (citation omitted). Here, our review of testimony from Brown's trial amply supports the PCRA court's conclusion that the purpose of Brown's petition was only to delay further the execution of his sentence.

An applicant for post-conviction DNA testing "does not meet the requirements of § 9543.1(a)(2) [if] the technology existed at the time of trial, the verdict was rendered after January 1, 1995, and the court never refused funds for the testing." *Commonwealth v. Perry*, 959 A.2d 932, 938-39 (Pa. Super. 2008) (citation omitted). We agree with the PCRA court that all of these conditions are satisfied in this case. As noted by the PCRA court, Brown was convicted well after 1995, and DNA testing was actually performed in his case. In essence, Brown mistakenly believes the newly amended section's reference to "newer technology" permits him to seek retesting without establishing a *prima facie* case.

Finally, we agree with the PCRA court that, given the eyewitness testimony regarding the sexual offenses, as well as Brown's own statements to Corporal Brenneman, **see supra**, "there is no reasonable probability that the requested testing would produce exculpatory evidence establishing [Brown's] actual innocence." PCRA Court Opinion, 1/3/20, at 3.

In sum, our review of the record supports the PCRA court's conclusion that Brown's petition for post-conviction DNA testing is untimely, and Brown failed to allege a *prima facie* case to support the DNA test he requested. We therefore affirm the order denying the petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/1/2020