J-S25040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TYRONE SLOWE | : | |
| | : | |
| Appellant | : | No. 116 EDA 2023 |

Appeal from the Order Entered November 3, 2022
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0002955-2008

BEFORE:  NICHOLS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED OCTOBER 25, 2023**

Tyrone Slowe (Appellant) appeals *pro se* from the order entered in the Delaware County Court of Common Pleas denying his request for postconviction DNA testing pursuant to Section 9543.1 of the Post Conviction Relief Act (PCRA).[1]  *See* 42 Pa.C.S. § 9543.1.  On appeal, Appellant argues the PCRA court erred or abused its discretion when it denied his request for DNA testing due to the court's determination that:  (1) Appellant failed to establish a *prima facie* case of actual innocence; (2) the PCRA court had previously denied a request for DNA testing, which was affirmed on appeal; (3) Appellant failed to demonstrate that the identity or participation of the perpetrator was at issue in his case; and (4) Appellant was ineligible for relief

---

[1] 42 Pa.C.S. §§ 9541-9546.

based on new technology and more accurate testing. For the reasons below, we affirm.

On February 18, 2009, Appellant entered a plea of *nolo contendre* to two counts of third-degree murder[2] for the shooting deaths of Tyrone Nelson and Jimmy Armstrong in Upper Darby, Pennsylvania, on the evening of April 16, 2008. The facts supporting Appellant's plea were summarized in a prior decision of this Court as follows:

> The affidavit of probable cause attached to the criminal complaint alleged as follows: numerous witnesses observed three black males fleeing the crime scene on foot and heard 4-5 gun shots before the males fled.
>
> Eulicious Johnson, [Appellant's] mother's boyfriend, reported seeing [Appellant] with Marquis Johnson and an unidentified man on the night of the shooting and also saw [Appellant] carrying a semi-automatic handgun within the past month. Johnson stated that [Appellant] had recently been arrested in Pottstown for narcotics violations and was committing robberies to pay for an attorney. Upper Darby police confirmed that Pottstown police had in fact arrested [Appellant] for drug-related offenses.
>
> On May 3, 2008, [Appellant] admitted to his mother that he "killed them [2other***ers]." On May 4, 2008, while in custody for unrelated charges, [Appellant] identified Maurice Smith as the unidentified male to which Eulicious Johnson referred. The police interviewed Smith, who admitted that he was driving around Philadelphia with [Appellant] for six hours on the evening of April 16th.
>
> On May 6, 2008, [Appellant] claimed in a custodial statement that he remained in the car while Smith and two

---

[2] *See* 18 Pa.C.S. § 2502(c).

unidentified men left the car and engaged in a gunfight. Smith and the other men returned to the car and drove downtown.

Two days later, [Appellant] claimed in another custodial statement that he walked with Smith and Marquis Johnson down the street until Smith told him to wait at an intersection.[3] Smith and Johnson continued to walk down the street, and [Appellant] heard Smith yell "yo, what's up" followed by four gun shots. [Appellant] then fled from the scene with Smith and Johnson.

*Commonwealth v. Slowe*, 1451 EDA 2009 (unpub. memo. at 1-2) (Pa. Super. Mar. 3, 2010) (paragraph breaks added), *appeal denied*, 240 MAL 2010 (Pa. Sep. 16, 2010). Additionally, a witness informed police that, near the scene of the murder, he observed a black male throw an object into the sewer and other objects onto a lawn. *See* Investigative Interview Record, Manbir Singh, 4/17/08, at 1; Upper Darby Police Incident Report, 5/10/08, at 6. The police recovered the murder weapon, a silver revolver, from the sewer, and a silver roll of duct tape, with one hair on it, and two receipts from a nearby lawn. *See* Upper Darby Police Incident Report, 5/10/08, at 6; Upper Darby Township Police Evidence Log, 4/17/08.

Appellant was subsequently charged with numerous offenses including two counts of first-degree murder. Appellant filed an omnibus pretrial motion seeking suppression of the statements he provided to police. The trial court

---

[3] In his statement, Appellant elaborated that the two men came to his house and Smith told him to "come down the street with him and [Johnson] because he ha[d] a quick come up." Appellant's Police Statement, 5/8/08, at 1. Appellant further explained that when Smith said they had a "quick come up," he "thought [Smith] was going to get money." *Id.* at 2.

conducted a suppression hearing on October 15, 2008, and later denied the motion on January 22, 2009.

On February 18, 2009, Appellant appeared for a plea hearing. The negotiated plea agreement called for Appellant to plead *nolo contendre* to two counts of third-degree murder at the present docket, in exchange for which he would receive two concurrent sentences of 15 to 30 years' imprisonment, and the Commonwealth would *nolle pros* the remaining charges. The agreement also included a guilty plea to an unrelated firearms charge at another docket, for which Appellant would receive a consecutive sentence of two to four years' imprisonment. N.T., 2/18/0 (A),[4] at 4. As the factual basis for the *nolo contendre* pleas, the Commonwealth relied upon the affidavit of probable cause, the autopsy reports, and Appellant's May 6th and May 8th statements to police. ***Id.*** at 4-5.

Appellant asked the trial court if he could plead guilty to only the firearms charge. N.T., 2/18/09(A), at 7. The court explained he could not do so because the plea offer was a "package [for] both cases." ***Id.*** Appellant then stated he wanted "to plead not guilty." ***Id.*** When the court explained that his jury trial would commence the next week, Appellant requested a new attorney because he did not "feel as though [Plea Counsel was] representing

---

[4] There are two transcripts for the February 18, 2009, plea hearing because the trial court recessed to allow Appellant time to speak with his attorney. We will differentiate between the transcripts by denoting the earlier transcript as (A), and the latter as (B).

[him] to the best of [her] abilities." ***Id.*** at 7-8. The trial court asked for specific examples, Appellant stated that he had been trying "to get . . . DNA tests . . . for the one weapon . . . involved in this case . . . regardless of whether it was used[,]" which he believed would prove his police statements were "false." ***Id.*** at 9. He also complained that while he received funding for a private investigator, the investigator "just started investigating [the] case about a week ago." ***Id.***

Plea Counsel informed the court that the recovered weapon was tested "and it came back that it was **not** [Appellant's] DNA." N.T., 2/18/09(A), at 11 (emphasis added). She acknowledged, however, that Appellant wanted her to test the DNA of other people, but she did not have the authority to do so. ***See id.*** at 11-12. Appellant again claimed he was "forced" to make statements to police which were "not true." ***Id.*** at 12. He believed if the DNA of the "other two people" mentioned in his statement — Smith and Johnson — was tested and also found not to be on the weapon, that would corroborate his claim that his police statements were coerced. ***See id.*** The court reiterated, however, that Plea Counsel had no authority to compel the DNA testing of other suspects. ***Id.*** at 13-14. Appellant also averred that Plea Counsel did not follow-up with witnesses he identified. ***See id.*** at 15. However, Plea Counsel responded that when she contacted the potential witnesses, they either did not respond or the phone number Appellant provided was no longer in service. ***See id.*** at 15-17. The Commonwealth repeated the terms of the plea and emphasized that if Appellant was convicted

of either first- or second-degree murder, he would be subject a mandatory term of life imprisonment. *Id.* at 28. Plea Counsel asked for additional time to talk with Appellant, which the trial court granted. *See id.* at 29-30.

When court reconvened, the parties informed the trial court that Appellant had the opportunity to speak with his mother who recommended he accept the plea offer. *See* N.T., 2/18/09(B), at 3-4. Appellant then indicated to the court that he intended to accept the plea agreement. *See id.* at 5. Plea Counsel conducted a plea colloquy before the court accepted the plea as knowing, voluntary and intelligent. *See id.* at 4-21. Both prior to and after the imposition of the negotiated sentence, Appellant again asserted his innocence. *See id.* at 22, 29.

Appellant filed a timely motion to withdraw his plea, which the trial court denied, followed by a timely direct appeal. New counsel was appointed, and on March 3, 2010, a panel of this Court affirmed the judgment of sentence, and the Pennsylvania Supreme Court subsequently denied allocatur review.[5] *See Slowe*, 1451 EDA 2009, *appeal denied*, 240 MAL 2010.

On December 22, 2010, Appellant filed a timely, *pro se* PCRA petition, asserting Plea Counsel's ineffectiveness. PCRA counsel was appointed, but

---

[5] On direct appeal, Appellant challenged the voluntariness of his *nolo contendre* plea, asserting that he maintained his innocence at the plea hearing. *See Slowe*, 1451 EDA 2009 (unpub. memo. at 4). In rejecting his claim, this Court noted: "[F]aced with the possibility of a life sentence, even if Appellant believed he was innocent, it was his decision to enter *nolo contendre* pleas in order to receive a lesser sentence." *Id.* at 9.

later filed a petition to withdraw and **Turner**/**Finley**[6] "no merit" letter. The PCRA court subsequently granted counsel's petition to withdraw and denied Appellant's petition without conducting a hearing. **See** Order, 5/18/11. On appeal, this Court affirmed the denial of PCRA relief, and the Supreme Court later denied allocatur review. **See Commonwealth v. Slowe**, 1529 EDA 2011 (Pa. Super. Jun. 24, 2014) (unpub. memo.), *appeal denied*, 506 MAL 2014 (Pa. Nov. 18, 2014).

On July 18, 2014, while Appellant's petition for allowance of appeal was still pending in the Supreme Court, Appellant filed a second *pro se* PCRA petition, which the PCRA court held in abeyance. Thereafter, on May 26, 2015, Appellant filed a motion for DNA testing pursuant to Section 9543.1. He sought testing of the following pieces of evidence: a cigarette butt, a bullet recovered from the interior wall of a residence on Hampden Road, the .357 revolver, five revolver rounds, two receipts, and one roll of duct tape. **See** Appellant's Motion for DNA Testing, 5/26/15, at 1. Appellant acknowledged that his DNA did not match samples already tested from the revolver or cigarette butt. **See id.** at 3. However, he asked the court for DNA testing of the other items, as well as comparison of all the samples to the DNA of his purported co-conspirators. **See id.** at 5. He explained that both Johnson and Smith "currently have, or should have, DNA samples available in the State

---

[6] **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. Super. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[database] that could easily be compared" to the evidence. *Id.* Appellant also "hope[d] that by running the sample through the [criminal databases,] the real killers" could be found. *Id.* at 7 (some capitalization omitted). Appellant subsequently filed an amended PCRA petition on December 27, 2016.

The PCRA court considered and denied all three petitions by order entered November 30, 2018.[7] The court found that Appellant's second PCRA petition was untimely, and that Appellant failed to meet the threshold requirements for DNA testing pursuant to Section 9543.1. *See* Order, 11/30/18, at 2-5, 12. On appeal, a panel of this Court affirmed. *See* *Commonwealth v. Slowe*, 3 EDA 2019 (unpub. memo. at 1) (Pa. Super. Aug. 19, 2019). Specifically, with regard to Appellant's request for DNA testimony, the panel concluded:

> The DNA testing that Appellant requests in the instant motion was available to Appellant when he entered his plea agreement on February 18, 2009 and the court did not refuse funds for testing. *See* 42 Pa.C.S.A. § 9543.1(a)(2). As such, the PCRA court properly concluded that Appellant had not met the threshold requirements for DNA testing under Section 9543.1(a)(2).
>
> Moreover, Appellant does not provide argument or analysis to challenge the PCRA court's finding that he failed to plead a *prima facie* case that exculpatory evidence would establish his actual innocence as required by Section 9543.1(c)(3). Even if we assume that Appellant's DNA was absent from pieces of evidence obtained from the crime scene, Appellant has made no attempt to show how DNA testing would establish his actual innocence. In

---

[7] The court also disposed of a *pro se* motion for discovery. *See* Order, 11/30/18, at 1 n.1.

addition to the fact that a witness came forward to testify that Appellant admitted to the murders, Appellant confessed to his investigator in a recorded phone call from prison that he was present at the scene of the murders; Appellant was repeatedly cautioned that this conversation was being recorded. As a result, we conclude that the PCRA court did not err in denying Appellant's request for post-conviction DNA testing under Section 9543.1.

*Id.* at 10-11 (some citations omitted).

On February 17, 2021, Appellant filed the present petition for post-conviction DNA testing. He sought testing of the same items listed in his prior petition, in addition to a human hair recovered from the duct tape, which he claimed was "never tested due to the lack of a root." *See* Appellant's Petition for DNA Testing Pursuant to 42 Pa.C.S.A. § 9543.1 et seq., 2/17/21, at 4-5 (unpaginated). In support of his request, Appellant discussed the inconsistencies between his police statement and the statements of the eyewitnesses, contradictions in Eulicious Johnson's statement, a purported suggestive photo identification, alleged police misconduct, and the fact that the purported co-conspirators, Smith and Johnson, were determined to have legitimate alibis. *See id.* at 6-17. Appellant also emphasized that the reason for the denial of his prior motion for DNA testing — that he entered a plea and confessed to the crime — "is no longer applicable" pursuant to a December 2018 amendment to the PCRA. *See id.* at 18. Lastly, Appellant maintained there have been "several technological advances" in DNA testing since his 2009 conviction — including genealogy testing, "Snapshot DNA Phenotyping," and "Mitochondrial testing" — and several items of evidence were never tested, nor compared to the DNA of Smith and Johnson. *See id.* at 20-23.

Although the PCRA court initially appointed counsel to assist Appellant in litigating his motion, Appellant requested to proceed *pro se*, which the court granted following a ***Grazier***[8] hearing.[9]  ***See*** Order, 3/17/22.  On October 7, 2022, after considering Appellant's petition and the Commonwealth's response, the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without conducting an evidentiary hearing.  Appellant did not file a response, and on November 3, 2022, the PCRA court entered an order denying Appellant's request for post-conviction DNA testing.  ***See*** Order, 11/3/22.  This timely *pro se* appeal follows.[10]

Appellant presents four issues for our review:

1. Did the [PCRA] court commit an abuse of dis[cretion] when it determined that [A]ppellant was unable to establish a prima facie case asserting actual innocence for DNA testing due to his confession?

2. Did the [PCRA] court commit an abuse of discretion when it relied upon [its] previous opinion (and Superior Court affirming) when it denied relief [on Appellant's] first motion for DNA testing as a basis to deny relief for the . . . second motion for DNA testing?

3. Did the [PCRA] court err when it determined that [Appellant] failed to meet the minimum threshold requirements of

---

[8] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

[9] We note, however, that a "petition[ ] for post-conviction DNA testing . . . does not carry with it the right to counsel." ***Commonwealth v. Perry***, 959 A.2d 932, 938 (Pa. Super. 2008).

[10] The PCRA court did not direct Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  Nevertheless, the court filed an opinion in support of its order on January 17, 2023.

presenting a prima facie case demonstrating that the identity or participation of the perpetrator was at issue during the proceedings?

4. Did the [PCRA] court err when it determined that [Appellant] was ineligible for relief pursuant to [Section] 9543.1(a)(2) concerning new technology and more accurate testimony and prior testing requested by indigent defendants?

Appellant's Brief at 4 (some capitalization omitted).

When considering an order denying post-conviction DNA testing,

[o]ur standard of review permits us to consider only whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error. Additionally, where the resolution of this appeal involves statutory construction, which involves a pure question of law, we review that aspect of the trial court's decision *de novo* and our scope of review is plenary. Moreover, the DNA testing statute, which was passed unanimously by the Pennsylvania General Assembly, should be regarded as a remedial statute and interpreted liberally in favor of the class of citizens who were intended to directly benefit therefrom, namely, those wrongly convicted of a crime.

*In re Payne*, 129 A.3d 546, 554 (Pa. Super. 2015) (*en banc*) (citations & quotation marks omitted). Furthermore, we note that while a motion for post-conviction DNA testing is considered under the rubric of the PCRA, it is "clearly separate and distinct from claims pursuant to other sections of the PCRA[,]" and not subject to the Section 9545 one-year time bar. *Perry*, 959 A.2d at 938 (citations & quotation marks omitted). *See* 42 Pa.C.S. § 9454(b). Rather, "DNA testing may be sought at any time if the motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice." 42 Pa.C.S. § 9543.1(a)(4).

- 11 -

The postconviction DNA testing statute provides, in pertinent part:

**(a) Motion.--**

(1) An individual convicted of a criminal offense in a court of this Commonwealth may apply by making a written motion to the sentencing court at any time for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. **If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the evidence was subject to the testing, but newer technology could provide substantially more accurate and substantially probative results, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.**

\* \* \*

(5) Notwithstanding any other provision of law, **a plea of guilty to a crime of violence, as defined in section 9714(g) (relating to sentences for second and subsequent offenses), or a confession** given by an applicant concerning the offense for which the applicant was convicted, **shall not prohibit the applicant from asserting actual innocence** under subsection (c)(2) or the court from making a determination and ordering DNA testing under subsection (d)(2).

\* \* \*

**(c) Requirements.--**In any motion under subsection (a), under penalty of perjury, the applicant shall:

\* \* \*

(3) present a prima facie case demonstrating that the:

- 12 -

(i) **identity of or the participation in the crime by the perpetrator was at issue in the proceedings** that resulted in the applicant's conviction and sentencing; and

(ii) DNA testing of the specific evidence, **assuming exculpatory results, would establish**:

(A) **the applicant's actual innocence of the offense for which the applicant was convicted**[.]

\* \* \*

**(d) Order.--**

\* \* \*

(2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility for an applicant under State supervision, or there is no reasonable probability for an applicant not under State supervision, or after review of the record of the applicant's guilty plea, the court determines that **there is no reasonable probability, that the testing would produce exculpatory evidence that**:

(i) **would establish the applicant's actual innocence of the offense for which the applicant was convicted**[.]

42 Pa.C.S. § 9543.1(a)(1)-(2), (5), (c)(3)(i)-(ii)(A), (d)(2)(i) (emphases added). In determining whether the new evidence would establish the defendant's "actual innocence," this Court has explained that "the newly discovered evidence must make it more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Commonwealth v. Conway*, 14 A.3d 101, 109 (Pa. Super. 2011) (citation & quotation marks omitted).

We note that the present statute includes language that was added in a December 2018 amendment, which was not in effect at that time Appellant filed his prior motion for postconviction DNA testing. This includes: (1) in subsection (a)(2), permitting an applicant to show that while the evidence may have been previously subject to testing, new technology could provide substantially more accurate results; (2) in subsection (a)(5), permitting an applicant who had confessed or pled guilty the opportunity to assert their innocence and obtain DNA testing; and (3) in subsection (d)(2), permitting the court to review the record of the applicant's guilty plea and conclude there is no reasonable probability that exculpatory results would establish the applicant's innocence. *See* 2018, Oct. 24, P.L. 896, No. 147, effective in 60 days [Dec. 24, 2018].

As Appellant's four issues are all related to the PCRA court's denial of his motion for postconviction DNA testing, we address them together. First, Appellant insists the PCRA court erred when it determined he could not establish his actual innocence because he confessed to the crime and the validity of his confession was fully litigated. *See* Appellant's Brief at 11. He emphasizes that the addition of subsection (a)(5), in the 2018 amendment, renders the prior case law to the contrary obsolete. *Id.* Second, Appellant contends the PCRA court abused its discretion when it relied on its prior opinion, and this Court's affirmance, as a basis to deny the present motion for DNA testing. *See id.* at 14. He maintains the PCRA court's prior decision denying postconviction DNA testing "was based solely on the fact that

- 14 -

[A]ppellant pled guilty and had a signed confession[,]" factors which are now irrelevant following the 2018 amendment to the statute. *See id.* at 15.

Third, Appellant argues the PCRA court erred when it found he failed to demonstrate that his identity or participation in the crime was at issue during the criminal proceedings. *See* Appellant's Brief at 16. He emphasizes that the statement he purportedly provided to police contained details regarding the clothing he wore the night of the murder and the direction he fled, which contradicted statements provided by eyewitnesses. *See id.* at 16-17. Appellant also points out inconsistencies in Eulicious Johnson's statement and preliminary hearing testimony, and highlights the fact that he repeatedly asserted his innocence, despite his *nolo contendre* plea. *Id.* at 17-18.

Moreover, Appellant insists that he explained how DNA testing would establish his innocence. Appellant's Brief at 18. He states:

> [A]ppellant has specifically requested testing pursuant to the Databank, Redundancy, and Confession Theories which postulate that a search of state and federal databanks will lead to the absence of DNA from [A]ppellant and his alleged accomplices and to the discovery of a separate assailant that will be linked to the crime by multiple pieces of evidence and when confronted with the evidence, the perpetrator will confess.

*Id.* at 18-19. Appellant maintains that courts of this Commonwealth have found these theories sufficient to prove a *prima facie* case. *Id.* at 19, *citing* *Payne*, *supra*, and *Conway*, *supra*.

Lastly, Appellant contends the PCRA court failed to consider his claim that new technology could provide more accurate results. *See* Appellant's Brief at 19. He notes that he "cited numerous methods that are newer and

more accurate testing methods that could establish a match to the previously unidentified DNA[.]" *Id.* at 20. Appellant also states that "he can make a strong argument that . . . he was denied testing by the [PCRA c]ourt on a prior occasion despite his indigency" because he "orally motioned" for further DNA testing during his plea hearing. *See id.* at 21, *citing* N.T., 2/18/09(A), at 9.

The PCRA court denied Appellant's petition for DNA testing for several reasons: (1) Appellant's confession barred his claim of "actual innocence[;]" (2) Appellant's identity was not at issue in this matter; (3) the "law of the case doctrine" precludes relitigation of this issue which was considered and rejected in a prior motion, and affirmed on appeal; (4) DNA testing was available when Appellant entered his plea and the trial court did not refuse funds for testing; and (5) based upon Appellant's inculpatory statements to police and others, there was "no reasonable probability that DNA testing would produce exculpatory evidence to show [his] actual innocence." *See* Notice of Intent to Dismiss Motion for Post Conviction DNA Testimony Without Hearing, 10/7/22, at 6-7; PCRA Ct. Op., 1/17/23, at 7-8, 10, 11-12.

Preliminarily, to the extent the PCRA court determined Appellant could not establish a *prima facie* case of his actual innocence because he confessed to the crime, we agree with Appellant that the court erred. As Appellant aptly points out, Subsection (a)(5), included in the 2018 amendments to the statute, explicitly states that neither a guilty plea, nor a confession, prohibits an applicant "from asserting actual innocence[.]" *See* 42 Pa.C.S. §

- 16 -

9543.1(a)(5). However, even prior to the enactment of the amendment, in 2011, the Supreme Court held "a confession, in and of itself, is not a *per se* bar under Section 9543.1(c)(3) to a convicted individual establishing a *prima facie* case that DNA testing would establish actual innocence of the crime for which he or she was convicted, even if the voluntariness of that confession has been fully and finally litigated." **Commonwealth v. Wright**, 14 A.3d 798, 817 (Pa. 2011). The Court explained that "the question of the voluntariness of a defendant's confession and the question of the defendant's actual guilt and innocence are fundamentally different issues[.]" **Id.** Thus, the PCRA court's reliance on Appellant's confession as the **sole** basis to deny relief was in error.

Nevertheless, it is well-settled that "[w]e can affirm the court's decision if there is any basis to support it, even if we rely on different grounds to affirm." **Commonwealth v. Rowe**, 293 A.3d 733, 739 (Pa. Super. 2023) (citation omitted). Upon our review, we conclude that Appellant is unable to demonstrate his eligibility for DNA testing under Section 9543.1.

First, Appellant cannot satisfy the prerequisites of Subsection (a)(2). Here, the evidence was discovered prior to Appellant's conviction, which occurred after January 1, 1995; thus, DNA testing was available. **See** 42 Pa.C.S. § 9543.1(a)(2). In fact, DNA from the recovered handgun was

submitted for testing and — significantly — Appellant's DNA was **not** a match.[11] **See** N.T., 2/18/09(A), at 11. Moreover, Appellant cannot establish that his "**counsel** sought funds from the court to pay for testing because [he] was indigent and the court refused the request[.]" **See** 42 Pa.C.S. § 9543(a)(2) (emphasis added). Appellant's **own** oral request for testing of the handgun during the plea hearing does not satisfy these requirements, particularly since the handgun had already been tested. **See** N.T., 2/18/09(A), at 9 (Appellant stating, "I've been trying to get [Plea Counsel] to push to get these DNA tests . . . for the one weapon that is involved in this case . . . regardless of whether it was used[.] I've been trying to push to get those DNA tests to prove that these statements against me are false.").

However, Appellant maintains that he sufficiently demonstrated his eligibility for relief pursuant to the language added in the 2018 amendment — namely, an applicant may seek DNA testing if "the evidence was subject to testing, but newer technology could provide substantially more accurate and substantially probative results[.]" **See** 42 Pa.C.S. § 9543.1(a)(2); Appellant's Brief at 14, 19-21. He insists that databank testing, genealogy testing and DNA phenotyping are all "newer technology" which might identify the "real killers." **See** Appellant's Brief at 20-21. Appellant misinterprets the requirements of the statute.

---

[11] We note, too, that a DNA report in the record states the cigarette butt was submitted for testing and revealed an "unidentified DNA profile, consistent with a female[.]" Pennsylvania State Police DNA Lab Report, 8/14/08, at 3.

In order to obtain testing, Appellant must establish that "newer technology could provide substantially **more accurate** and substantially **probative** results[.]" *See* 42 Pa.C.S. § 9543.1(a)(2) (emphases added). The test that was conducted on the handgun prior to trial revealed a DNA profile, just not Appellant's profile. While Appellant requests additional DNA testing, in actuality, he simply wants the lab to conduct further investigation and comparisons to determine **who** the identified DNA matches. That is not the purpose of the amendment. There is no indication that the identified DNA profile is not accurate enough to match a suspect. Thus, Appellant cannot satisfy the preliminary requirements of Section 9543.1(a)(2).

Second, even if Appellant were able to meet the statutory requirements of Subsection (a)(2), we would still conclude he failed to present a *prima facie* case demonstrating that "DNA testing of the specific evidence, assuming exculpatory results, would establish [his] actual innocence of the offense for which [he] was convicted[.]" *See* 42 Pa.C.S. § 9543.1(c)(3)(ii)(A). We arrive at this conclusion for two reasons: (1) this Court has already rejected this same argument in a prior appeal; and (2) the complete lack of Appellant's DNA on all tested items, and the identification of another suspect, would not undermine his conviction.

As noted *supra*, Appellant filed a motion for postconviction DNA testing in May of 2015. He sought testing of the same evidence as in the present motion and requested that the samples be "run[ ] through the criminal data[bases]" to determine the "real killers[.]" Appellant's Motion for DNA

Testing, 5/26/15, at 7 (some capitalization omitted). He specifically referred to the redundancy, databank and confession theories described in **Conway**, **supra**. The PCRA court determined Appellant could not meet the threshold requirements under the Act, and this Court affirmed on appeal.

The "law of the case" doctrine provides that "when an appellate court has considered and decided a question submitted to it upon appeal, it will not, upon a subsequent appeal on another phase of the case, reverse its previous ruling even though convinced it was erroneous." **Commonwealth v. Gacobano**, 65 A.3d 416, 420 (Pa. Super. 2013) (citation omitted). However, this Court has acknowledged that "the law of the case doctrine might not apply under exceptional circumstances, including: an intervening change in the law, a substantial change in the facts, or if the prior ruling was clearly erroneous and would create a manifest injustice if followed." **Commonwealth v. McCandless**, 880 A.2d 1262, 1268 (Pa. Super. 2005) (*en banc*) (citation & quotation marks omitted).

Here, Appellant insists that the 2018 amendment to the statute constitutes an intervening change in the law, such that the prior denial of DNA testing is not controlling. **See** Appellant's Brief at 14-16. Specifically, he argues the PCRA court's prior ruling "was based solely on the fact that [he] pled guilty and had a signed confession." **Id.** at 15, *citing* PCRA Ct. Op.,

3/8/19.[12] Regardless of the PCRA court's ruling, however, **this Court** did not rely **solely** on Appellant's confession and *nolo contendre* plea when it affirmed the PCRA court's decision on appeal. *See Slowe*, 3 EDA 2019 (unpub. memo. at 10-11). Instead, the *Slowe* panel concluded that Appellant did not meet the threshold requirements under Subsection (a)(2) and, in any event, assuming exculpatory results, Appellant could not establish his actual innocence because, in addition to his statements to police, he admitted to other witnesses that he participated in the murders and confessed to a private investigator during a prison phone call that he was present at the scene.[13] *See id.* Although the panel did not apply the 2018 amendments to the statute, we reiterate that since 2011, the law has been clear that "a confession, in and of itself, is not a *per se* bar" to DNA testing under Section

_____

[12] We note that the PCRA court's March 8, 2019, opinion is not included in the certified record on appeal.

[13] This "confession" is included in a detailed summary of the work performed by Appellant's private investigator, Don Fredericks, which was attached to the trial court's order approving the payment of funds. *See* Order, 3/4/09, attachment Don Fredericks Investigations Services Rendered, 2/17/09. Fredericks summarized that on February 15, 2008, he participated in a three-way call with Appellant, who was in prison, and Appellant's mother. *See* Don Fredericks Investigations Services Rendered at 3-4. Fredericks stated that Appellant "complain[ed] that he was being convicted or made to plead guilty to something where he was a lookout" and stated "the gun that was thrown into the sewer did not have his prints or DNA[,]" but if Johnson or Smith were tested, it "would show that they, either one, held the weapon." *Id.* at 4-5. Fredericks noted that "on several occasions a recording would come on advising all parties to this call that it was being recorded." *Id.* at 4.

9543.1(c)(3). *See Wright*, 14 A.3d at 817. Therefore, we conclude Appellant's present claim is barred by the law of the case.

Lastly, even if Appellant could meet the preliminary prerequisites for testing, and we determine the law of the case doctrine does not apply, we would still conclude Appellant is entitled to no relief. Appellant's primary argument is as follows: (1) despite his plea, he has consistently maintained his innocence; (2) no physical evidence links him to the murders; (3) his "confession" was coerced and is inconsistent with the statements of uninterested eyewitnesses; and (4) a search of DNA databases will lead to the real culprits, who will then confess to the crime and exonerate him. While Appellant recognizes that "the absence of evidence is not evidence," he insists that the databank, redundancy, and confession theories upon which he relies were sufficient to demonstrate a *prima facie* case of actual innocence in *Conway* and *Payne*, and, thus, should be sufficient in the present case. *See* Appellant's Brief at 19.

Appellant's reliance on *Conway* and *Payne* is misplaced. First, both defendants were convicted in the late 1980's, and none of the relevant evidence was subject to DNA testing at that time. *See Conway*, 14 A.3d at 102, 106-07; *Payne*, 129 A.3d at 549, 556-57. Second, neither defendant provided a statement to police admitting to their involvement, and nor entered a plea of guilty or *nolo contendre*; both defendants were convicted following a jury trial. *See Conway*, 14 A.3d at 102; *Payne*, 129 A.3d at 551. Moreover, in both cases, this Court concluded that the identification of a third

party's DNA at the murder scene could have established the defendant's innocence.

In **Conway**, the defendant admitted to finding the murdered victim's body, and touching items at the crime scene. **See Conway**, 14 A.3d at 106. However, despite the fact that the victim was stabbed, no blood was recovered from the knife he was carrying on the day of the murder, and "none of the more than 30 fingerprints lifted from the scene came from the defendant." **Id.** at 107. Because it appeared that the culprit had extensive contact with the victim's clothes and skin, the **Conway** Court concluded that if another person's DNA was identified on the victim's clothing or skin, the defendant could establish a *prima facie* case of his innocence. **See id.** at 112.

In **Payne**, the victim was discovered murdered in her home, which appeared to have been ransacked. **See Payne**, 129 A.3d at 549. The defendant was identified as a suspect based upon inculpatory statements he purportedly made to three individuals, all of whom were of questionable credibility. **See id.** at 550. They all claimed the defendant told them he committed the home invasion with two others, although only one set of footprints was left in the snow surrounding the victim's home. **See id.** at 549-50. The defendant maintained his innocence and testified in his own defense at trial. **Id.** at 551. The **Payne** Court noted that while the defendant allegedly confessed to the three witnesses that he committed the crime with two accomplices, there was "no independent physical or circumstantial evidence of multiple burglars [to] corroborate[ ] their testimony." **Id.** at 562.

Moreover, if the DNA testing revealed the profiles of any of the three witnesses, "such results would not only be exculpatory, but could serve to completely undermine the Commonwealth's case[.]" *Id.* Thus, the *Payne* Court affirmed the PCRA court's decision to permit DNA testing.

The facts presented in the case *sub judice* are simply not as compelling as in *Conway* or *Payne*. Appellant never admitted to being the shooter. In his statement to police, Appellant claimed that he waited at the corner while Smith and Johnson shot the victims. *See* Appellant's Police Statement, 5/8/08, at 1. Moreover, he described himself at the "lookout" on a recorded phone call with his private investigator. *See* Don Fredericks Investigations Services Rendered at 4. Thus, the fact that his DNA was not on the handgun is simply not exculpatory as he could have been convicted as a co-conspirator or accomplice. Further, since the other items for which he seeks testing were discarded by the same person who discarded the handgun, there is no reason to suspect his DNA would be on those items, and the absence of his DNA would not establish his innocence.

To the extent Appellant contends that the absence of Smith and Johnson's DNA would also serve to establish his innocence, we disagree. Despite Appellant's identification of Smith and Johnson as his co-conspirators, neither was arrested in connection with the murder. Even if a third party's DNA was identified on the handgun, that fact would not serve to undermine

Appellant's culpability as a "lookout." Accordingly, Appellant is entitled to no relief.[14]

For all the foregoing reasons, we conclude the PCRA court did not err when it denied Appellant's motion for postconviction DNA testing.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: October 25, 2023

---

[14] Because we conclude Appellant cannot satisfy the statutory prerequisites for relief, and, in any event, he is unable to demonstrate that DNA testing would establish his actual innocence, we need not address Appellant's assertion that the PCRA court erred when it found his identity or participation in the crime was not at issue. *See* Appellant's Brief at 16-18.